KNIGHT-MORLEY CORPORATION *v.* EMPLOYMENT
SECURITY COMMISSION.                    :

1. UNEMPLOYMENT COMPENSATION—FINDING OF APPEAL BOARD—
GREAT WEIGHT OF EVIDENCE.

Finding of appeal board of employment security commission that plaintiff employer had fired claimants as of day they were advised to return to work or be considered as having quit their jobs and would be replaced *held,* supported by evidence, hence, was not against the great weight thereof (CLS 1956, § 421.38).

2. SAME—FINDING OF FACTS—INFERENCES.

The problem of determining permissible factual inferences from admitted occurrences, as distinguished from a determination of disputed facts, involves the fact-finding .function of the employment security commission (CLS 1956, § 421.38).

3. SAME—DISCHARGE OF EMPLOYEE WHILE ON STRIKE.

The status of a person as an employee terminates when he is discharged by the employer even though then on strike, hence, if otherwise qualified, the former employee would be entitled to unemployment compensation after the discharge (CLS 1952, § 421.29).

Appeal from Ingham; Hayden (Charles H.), J. Submitted January 17, 1958. (Docket No. 2, Calendar No. 47,368.) Decided April 15, 1958.

Certiorari by Knight-Morley Corporation, a Michigan corporation, against the Michigan Employ-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 48 Am Jur, Social Security, Unemployment Insurance and Retirement Funds § 44.

[3] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 36.

Construction and application of provisions of unemployment compensation or social security acts regarding disqualification for benefits because of labor disputes or strikes. 28 ALR2d 287.

ment Security Commission and its appeal board, challenging validity of unemployment compensation awards. Carlton D. Semos and 49 other claimant employees added as parties defendants. Judgment for defendants upholding awards. Plaintiff appeals. Affirmed.

*Langs, Molyneaux & Armstrong,* for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, and *Edward Coughlin,* Assistant Attorney General, for defendant commission.

*Zwerdling & Zwerdling (A. L. Zwerdling* and *Elliott I. Beitner,* of counsel), for claimant defendants.

Dethmers, C. J. This is an unemployment compensation case involving 50 claimants. The question is whether during the period for which compensation was allowed claimants' unemployment was due to a stoppage of work existing because of a labor dispute,* disqualifying them for benefits, or had their admitted disqualification for that reason at the outset of their unemployment ended on a specific date by reason of their discharge from employment by the employer. The commission's holding that their disqualification had so ended and consequent allowance of benefits for the ensuing period were affirmed by referee, appeal board and, on certiorari, by circuit court judgment from which this appeal is taken by the employer.

While in plaintiff's employ, claimants left their jobs and went out on strike on September 30, 1953. (All dates hereinafter mentioned are for the year

* See CLS 1952, § 421.29 (Stat Ann 1951 Cum Supp § 17.531).—
Reporter.

1953.)   Although some of it is disputed by employer, there is competent evidence to the following effect: on September 30th employer's president told some of the employees as they went out on strike that, if they did so, they were fired and all through with their jobs, and that replacements would be hired; on October 1st the employer sent all employees a letter stating that unless they reported for work by October 5th employer would consider that they had quit their jobs and would replace them; none told employer that they were quitting or had quit; on October 5th claimants' and other strikers' employment cards were "pulled from the timecard rack" by employer and they were "removed from the company's pay roll;" on October 5th employer cancelled the group life insurance policies of the strikers and also their hospital and surgical plan insurance, and refused the union's request to maintain the insurance coverage for the strikers, by a letter dated October 16th, which referred to them as "former employees" and to "terminated" employment; after October 5th employer undertook to hire replacements; none of claimants were ever returned to work by employer, but they, or most of them, were replaced gradually by transfers or new employees as rapidly as employer was able to secure qualified replacements; on October 9th employer caused an open letter to be printed in a newspaper which stated with respect to those on strike that "they are no longer employees of this company;" on October 10th, at a bargaining session with the union, employer took the position that negotiations would cover only employees then on the job and not those who had failed to heed its October 1st notice to return to work by October 5th because they were considered as "quit;" employer took back all strikers who returned by October 5th but refused to take any who sought to return to work after that date, except for one

whom it offered to consider as an applicant as a new employee without seniority but who was not thereafter so employed.

Plaintiff says that the appeal board finding that plaintiff fired claimants as of October 5th, if a finding of fact, is contrary to the great weight of the evidence.* The record amply supports such finding made by the commission and affirmed by referee, appeal board and circuit court. Even testimony for plaintiff, offered in refutation of the evidence above summarized, tends to confirm it, the difference revolving largely around the distinctions between claimants' contention that employer told them they were fired and plaintiff's insistence that it merely informed them that if they went out on strike it would consider them as having quit their jobs and would replace them. This difference is largely a play on words, without controlling significance. It would be difficult to conceive of language and accompanying course of action by an employer more expressive of a present intent to discharge employees or more effective to accomplish that end. The commission finding in that regard cannot be said to be against the great weight of the evidence.

Plaintiff urges, however, that the finding of the commission did not resolve a question of fact but one of law, and that, therefore, "great weight of the evidence" is not the test for us to apply. In this connection it cites *Hubbard* v. *Unemployment Compensation Commission,* 328 Mich 444, for the distinction therein made between disputes involving facts and disputes involving the significance of facts and the holding that the latter raise questions of law rather than of fact. It is to be observed, however, that in that case the problem related to what significance the facts had within the meaning of the provisions

_____
* See CLS 1956, § 421.38 (Stat Ann 1957 Cum Supp § 17.540).— REPORTER.

of the controlling contract of employment and statute there involved. Here, if, as plaintiff contends, the problem is not one of resolving disputed facts, it is at least one of determining the permissible factual inferences to be drawn from admitted occurrences, which involves equally, as in the case of disputed facts, the fact-finding function of the commission.

Assume, however, that the commission's finding that claimants were fired amounted to resolving a question of law. Plaintiff's claim of error in the commission's determination of that alleged question of law is predicated on the proposition that as a matter of law employees out on strike are not discharged by employer's announcements and assertions to that effect unless and until the employer replaces them with other employees, or the employees by some overt act such as obtaining permanent employment elsewhere, reveal that they have accepted the employer's actions or statements as a discharge. Employer says that this was not shown to have happened here, at least not as to all of the claimants, and at all events not as of October 5th, the date from which the commission allowed benefits to run. With such theory of the law we are not in accord. Despite the distinctions between the instant case and *Intertown Corporation* v. *Unemployment Compensation Commission,* 328 Mich 363, in that there the decision related not to disqualification due to work stoppage resulting from a labor dispute, but, rather, to one due to employees allegedly leaving work voluntarily without good cause attributable to the employer and the period for which compensation was claimed came after the strike had ended, nevertheless the language in our opinion in that case is expressive of our view then and now. In that case, while employees were out on strike, the employer sent them pay checks with a letter which

they interpreted as termination of their employment. They did not thereafter obtain permanent employment elsewhere. Stressed is the distinction on the facts between that case and this, that there claimants were shown to have been replaced prior to the period for which compensation was allowed. That is an element which we do not deem a *sine qua non* to a completed act of discharge by the employer. In affirming allowance of benefits in that case, we said (pp 366, 367):

"Claimants here did not quit their job; they went out on strike. Although on strike they were still employees. See *Lawrence Baking Co.* v. *Unemployment Compensation Commission*, 308 Mich 198 (154 ALR 660), and *National Labor Relations Board* v. *Mackay Radio & Telegraph Co.*, 304 US 333 (58 S Ct 904, 82 L ed 1381). They remained employees until discharged by the corporation during the second week of the strike."

The holding in that case that the action of the employer constituted a discharge was necessary to decision of the case and, as such, is controlling of the situation at bar. See, also, *Marathon Electric Manufacturing Corp.* v. *Industrial Commission,* 269 Wis 394 (69 NW2d 573, 70 NW2d 576).

The commission correctly found that claimants were discharged by employer as of October 5th, ending the disqualification applying to the period from their walkout on September 30th to October 5th, and properly allowed benefits from and after the latter date.

Affirmed, with costs to defendants.

CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., did not sit.