341 P.2d 197

**Claim of R. P. O'TOOLE for Employment Security Benefits.**

No. 8705.

Supreme Court of Idaho.

July 7, 1959.

Frank L. Benson, Atty. Gen., and John W. Gunn, Asst. Atty. Gen., Graydon W. Smith, former Atty. Gen., on the brief, for Employment Security Agency.

Carver, McClenahan & Greenfield, Boise, for claimant.

Hawkins & Miller and William A. Reagan, Coeur d'Alene, for employer Ohio Match Co.

**McQUADE, Justice.**

Appellant is the claimant, R. P. O'Toole, and respondents are the Ohio Match Company and the Employment Security Agency, State of Idaho. Claimant appeals from an order of the Industrial Accident Board denying his claim for unemployment compensation.

Because the defendant-respondent, Ohio Match Company, and its union employees were unable to resolve certain differences, the plant was closed July 25, 1957. December 7, 1957, the respondent company and the International Woodworkers of America, Local No. 10–119, entered into an agreement whereby their differences were settled, and each party thereto agreed it was in their mutual interest to reopen the plant.

December 7, the Ohio Match Company notified each employee by certified mail, return receipt requested, which letter claimant picked up December 16, that operations of the plant would be resumed, and therein quoted a portion of the agreement, to wit:

"* * * 'Any employee who shall not present himself for work to the Company withing ten (10) working days from the date he receives notice that the strike is ended and the plant will reopen will no longer be considered an employee of the Company. However, in no event will any employee retain his employment rights who fails to present himself for work within thirty (30). calendar days following the date notice is sent to him'."

The letter further states:

"Therefore, if you are interested in retaining your employment with the Ohio Match Company, you must contact your supervisor or Mr. Ernest Randolph, Personnel Director, indicating your desire to return to work, within ten (10) working days after you receive this notice."

On December 9, claimant, in the company of Louis B. Staeheli, went to the offices of the respondent company to pick up their "vacation checks." Claimant received his check, and while departing the office, turned in the doorway and said, "When do we go back to work?" Paymaster K. E. Irvin, who had a check list of employees who were to report Wednesday, December 11, advised O'Toole he was

to report on that date. The list of employees which Irvin had were those necessary to commence operation of the plant. That same day, claimant made his application for unemployment compensation benefits.

O'Toole did not report for work on Wednesday. Early that afternoon, O'Toole and a friend, Staeheli, went to the office of Ernest Randolph, personnel director of Ohio Match Company, to inquire as to claimant's seniority status and what job was available. They were advised by another employee that Randolph was inside the plant, and that entry could not be made therein without a pass from Randolph. The two men remained 20 to 30 minutes, and then departed.

On Friday, December 13, Randolph, the personnel director, mailed a termination of employment notice to the claimant. The new contract between the union and the company provided:

"Seniority of an employee shall cease and terminate if he is absent from work for two (2) consecutive working days unless a reasonable excuse is given. An employee detained from work on account of sickness or for any other causes that are just, shall notify the Payroll Department as early as possible."

In arriving at a determination whether claimant was entitled to unemployment benefits, hearings were had before a claims examiner, and thereafter appeals were taken to a determinations examiner, an appeals examiner, and finally to the Industrial Accident Board.

When questioned as to why he did not report for work on December 11, claimant stated he had promised friends he would get firewood for them, and he figured he had the full 10 days, as set forth in the notice, in which to report. He also stated that employees with more years of seniority would have "bumped" him off the job offered after 48 hours. ("Bumping" is a system whereby jobs are selected by the employees; years of service is the method of determining who shall have priority.)

The company introduced evidence to show that claimant was seventy-ninth on the seniority list, and that a man who substituted when O'Toole failed to show up for work, was still working. The company further asserted that this substituted employee had fewer years of seniority than did O'Toole. There was also evidence to show that "bumping" was still continuing at the time of claimant's hearing.

The company asserts that of approximately 60 employees who were to report

**374**

Wednesday, December 11, all reported for employment excepting two who were ill, and the claimant.

The issue presented to the Industrial Accident Board was whether claimant O'Toole refused suitable employment, or if he was discharged. The Industrial Accident Board affirmed the appeals examiner's decision whereby compensation was denied for an indefinite period, or until such time as claimant should have obtained bona fide work and been paid wages therefor for 30 days and again become unemployed through no fault of his own, on the ground that claimant had refused an offer of suitable employment. In affirming the examiner's order, the Industrial Accident Board pointed out that claimant's reasons for not returning to work were trivial.

■ Appellant makes four assignments of error, the first of which is:

"The Industrial Accident Board abused its discretion and made a finding which is arbitrary and unsupported by any evidence that a tender of a job was made to appellant."

Claimant himself admits employment was offered him. Therefore, such specification of error is without foundation.

■ The second assignment of error is as follows:

"The Industrial Accident Board erred in its ruling of law that appellant refused an offer of suitable employment in that the ruling itself admits that there was no actual refusal on the part of appellant."

Such contention is without foundation, as the claimant more than demonstrated his refusal of employment by failing to report for work.

■ The third assignment of error is as follows:

"The Industrial Accident Board erred in its ruling of law in that it refuses to recognize the 10-day time limit set by the Recommendation for reporting back to work as a factor to be considered by the Board in its determination of the matter."

O'Toole complied with the provisions of the agreement, and reported for work on December 9, well within the 10 days provided therein. He was advised to go to work on December 11. It cannot be said O'Toole accepted this offer of employment.

To be eligible for compensation benefits, I.C. § 72–1366(e) requires:

"(e) During the whole of any week with respect to which he claims benefits

or credit to his waiting period he was able to work, available for suitable work, and seeking work * * *."

This Court has held in Turner v. Boise Lodge No. 310, 77 Idaho 465, 295 P.2d 256, that a claimant must satisfy all three requirements of the statute in that he must be (1) able to work, (2) available for suitable work, and (3) seeking work. Appellant was not seeking work within the spirit of the statute.

We are not determining the right of the Ohio Match Company to terminate the seniority and other employment rights of O'Toole. We are saying only that the claimant was not entitled to benefits for a claim filed on the same day that he was notified employment was available.

█ The fourth specification of error is as follows:

"The Industrial Accident Board erred in making its order for the reason that such order is based on erroneous rulings of law and findings of fact which are not supported by the evidence."

There is ample evidence to sustain the findings of the Industrial Accident Board.

The order is affirmed.

Costs to respondent.

PORTER, C. J., and TAYLOR, SMITH and KNUDSON, JJ., concur.