## Mattson Unemployment Compensation Case.
### Erie Resistor Corporation, Appellant, *v.* Unemployment Compensation Board of Review.

Argued November 16, 1960.   Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Irving Olds Murphy,* with him *Gifford, Graham, MacDonald & Illig,* for employer, appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*James Craig Kuhn, Jr.,* with him *Wilner, Wilner and Kuhn,* for claimants, intervening appellees.

OPINION BY WATKINS, J., January 25, 1961:

This is an appeal by the employer in an unemployment compensation case from an award of benefits to one hundred and five claimants who were striking employees who had been replaced during the strike. The Bureau of Employment Security, the Referee and the Board dismissed the contention of the appellant that such claimants were unemployed through fault of their own in that they voluntarily left their employment without a cause of a necessitous and compelling nature, within the meaning of §402(b) of the Unemployment Compensation Law, 43 PS §802(b).

The contract between the union and the employer expired on March 31, 1959, and when negotiations to execute a new contract failed, a strike was called with picket lines established April 1, 1959. This dispute came to an end on June 24, 1959. During the strike production was continued by the employer, using temporary and permanent replacements of those on strike.

The Supreme Court of Pennsylvania in *Melchick Unemployment Compensation Case,* 396 Pa. 560, 564, 154 A. 2d 875 (1959),[1] held that "A striker continues as an employee during the strike and only removes himself from actual labor." This is true with the exceptions that the striking employee may establish that he has severed the employer-employee relationship. *Oluschak Unemployment Compensation Case,* 192 Pa. Superior Ct. 255, 159 A. 2d 750 (1960), and except to the extent that a striker may be replaced during an economic strike. *General Electric Company,* 80 N.L.R.B. 510 (1948) ; *N. L. R. B. v. Mackay Radio & Telegraph Company,* 304 U. S. 333; *N.L.R.B. v. Potlatch Forrests, Inc.,* 189 F. 2d 82.

The issue here involves the interpretation of §402(b) of the Unemployment Compensation Law, supra, the

[1] *Pramco, Inc. v. Unemployment Compensation Board of Review,* 396 Pa. 560, 564, 154 A. 2d 875 (1959).

pertinent parts of which read as follows: "An employe shall be ineligible for compensation for any week— . . . (b) (1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . . And provided further, That the provisions of this subsection shall not apply in the event of a stoppage of work which exists because of a labor dispute. . . ."

"As a general rule, a provision, which disqualifies employees from receiving benefits when their unemployment is caused by a stoppage of work due to a labor dispute, refers to the employer's plant operations rather than the employee's labor." C.J.S. Social Security and Public Welfare, Vol. 81, §190. The general rule was followed by this Court in *Harris Unemployment Compensation Case*, 185 Pa. Superior Ct. 235, 138 A. 2d 207 (1958) and in *Schreiber Unemployment Compensation Case*, 187 Pa. Superior Ct. 135, 144 A. 2d 448 (1958), where we said in the *Harris* case, at page 238, "While the statute does not define the term 'stoppage of work', nor has it been expressly defined in any Pennsylvania case which has been cited or which our research has disclosed, we are clearly of the opinion that the term refers to cessation of work in the plant or place of employment, and not to cessation of work by the employe. This is the plain import of our prior decisions, and is the interpretation of the term under similar statutes in other jurisdictions. See Gerber v. Board of Review, 36 N. J. Super. 322, 115 A. 2d 575, and cases cited therein."

In the instant case, §402(d) was not involved as it is agreed and it was so found that a labor dispute existed. There is no question in this case but that during the labor dispute the claimants were not entitled to benefits so that in determining the claimants' eligibility under §402(b), supra, the question involved as to work stoppage determines whether there has been a replace-

ment so that the relationship of the employer-employee has been severed. If stoppage of work refers to the employer's plant operation, then there has been no stoppage in this case because the finding of fact discloses that the employer continued operation during the strike. If, however, stoppage of work refers to the employee's labor, then, whether he was replaced or not is immaterial as his stoppage of work continued as a result of a labor dispute for the entire duration of the strike.

Judge WRIGHT in speaking for this Court in the *Harris* case, at page 239, supports the interpretation of "plant stoppage" as follows: "The declaration of public policy contained in Section 3 of the Act (43 P.S. 752) expressly provides that the unemployment reserves therein established are to be used 'for the benefit of persons unemployed through no fault of their own'. This declaration must be considered in construing every provision of the statute and in determining eligibility for benefits in every case: Michalsky Unemployment Compensation Case, 163 Pa. Superior Ct. 436, 62 A. 2d 113. To uphold the decision of the Board in the case at bar would be to penalize employers every time a small segment of employes strikes to gain recognition. If the employer does not replace those employes who refuse to work, 'confusion' results and the plant operates under a handicap. On the other hand, if the employer replaces the striking employes in order to properly continue operations, the effect of the Board's decision is to create a dilemma when the striking employes attempt to return. If they are reinstated, the new employes must be discharged. In either event, under the Board's decision, one group or the other would be entitled to benefits. Certainly the legislature did not contemplate such a result."

We decided on January 21, 1958, the same date as the *Harris* case, the *Melchick Unemployment Compensation Case*, 185 Pa. Superior Ct. 303, 138 A. 2d 210

(1958), which also held that the term "stoppage of work" refers to cessation of work at the plant and not to cessation of work by the employee. The Supreme Court of Pennsylvania, on appeal from this Court's decision, reversed on the ground that neither the interpretation of §402(d) of the Act nor §402(b) of the Act were in issue, as the slack in production and the decrease in jobs at the end of the strike made it impossible to rehire or reinstate the claimants. They became unemployed through no fault of their own and were entitled to benefits.

Unfortunately, therefore, the interpretation of work stoppage, was not in issue and cannot be said to be finally determined by this decision. Counsel for the claimants contend, however, that the import of the *Melchick* case was to overrule the *Harris* and *Schreiber* cases and P.L.E. Vol. 33, Social Welfare, §95, so interpreted it by stating, "Previously, the phrase 'stoppage of work' had been construed as referring to the cessation of work in the plant or place of employment, rather than to the employee's own cessation of work, so that where a strike was not sufficiently effective to stop an employer's operation, there was deemed to be no 'stoppage of work', and employees who left on strike were not entitled to compensation even though they were refused reemployment. In Pramco, Inc. v. Unemployment Compensation Bd. of Review,[2] the Supreme Court held that the employer-employee relation is not severed by a strike, but continues until the dispute is settled or the employee secures other employment, and went on to hold that, within the statutory provision under discussion, 'stoppage of work' refers to a cessation by the employee, and determined that an employee was entitled to unemployment compensation benefits even though the strike had not been effective to shut down

---

[2] *Melchick Unemployment Compensation Case*, 396 Pa. 560.

the plant, although it did so curtail operations that it was impossible for the employer to rehire the claimant."

What Mr. Justice COHEN said in his opinion in the *Melchick Unemployment Compensation Case,* supra, at page 564, was, "If the interpretation of stoppage of work made by the Superior Court were correct, then for all practical purposes the proviso in Section 402(b) would be inoperative. A striker would be in danger of forfeiting all his compensation rights in any situation where a strike was less than 100% effective. Appellants contend that 'stoppage of work' insofar as it is used in Section 402(b) refers to a cessation by the employee; it is quite clear that this is a sounder view. We are not called upon here to interpret the meaning of this phrase as it is used in Section 402(d) which is concerned with the right to compensation during a labor dispute. If we were faced with that question, we might reach a different conclusion."

The Unemployment Compensation Board decided this case clearly on the ground that the Supreme Court had decided that "work stoppage" meant the cessation of work by the employee and that the import of the decision was to reverse the *Schreiber* and *Harris* cases, which had held the contrary that "work stoppage" meant "plant stoppage". We do not believe the *Melchick* case did this, although there is obiter dictum strongly indicating this was the feeling of the Court. We feel that the most reasonable interpretation of stoppage of work, is the employer's operation. In any event, the interpretation of the term should be uniform in applying it to §§402(b) and 402(d), as otherwise we would be compounding confusion. And too, the ultimate decision in this case should set straight the law in Pennsylvania.

There is great merit in Mr. Justice COHEN's comment in the *Melchick* case at page 564, that if "stop-

page of work" means "plant stoppage", "then for all practical purposes the proviso in Section 402(b) would be inoperative. A striker would be in danger of forfeiting all his compensation rights in any situation where a strike was less than 100% effective." However, if we would so interpret "stoppage of work" in §402(d) it seems that an industrial dispute might exist if one disgruntled employee ceased working for any imagined industrial grievance, and as we said before, most certainly it adds to the confusion if we interpret the same term one way for one section and another way for the other section.

We believe that "work stoppage" can be uniformly interpreted as "plant stoppage" and still not bring about the injustice pointed out by Justice COHEN in the *Melchick* case. Despite the problem posed by the definition of "work stoppage", doesn't this case also call for the interpretation of "suitable work" requirements of the law, 43 PS §753(t)(1), which reads as follows: "Suitable work means all work which the employe is capable of performing. . . . However, notwithstanding any other provisions of this subsection no work shall be deemed suitable in which (1) the position offered is vacant, due directly to a strike, lockout or other labor dispute."

Here, there is no question that a labor dispute existed at the time the employer's letters went out giving the claimants until May 7, 1959, to return to their jobs or expect to be replaced. The positions offered them at that time were clearly made vacant as the result of a labor dispute. The claimants were therefore justified in refusing to accept the proffered jobs and at the end of the labor dispute could not be determined to have disqualified themselves from benefits as "voluntary quits". This question was clearly decided in *Urda Unemployment Compensation Case*, 161 Pa. Superior Ct. 594, 56 A. 2d 393 (1948), where striking miners refused

to return to work at the suggestion of their union on the theory of no contract, no work, and it was held that the positions offered were vacant due to the existence of a labor dispute and they were not ineligible at the end of the industrial dispute, as having failed to accept "suitable work". If the offer of work was unsuitable as determined under §753, supra, then the problems of "stoppage of work" and "replacement" both become immaterial and these claimants were entitled to benefits.

Decision affirmed.

WRIGHT, J., concurs in the result.

---

CONCURRING AND DISSENTING OPINION BY MONTGOMERY, J.:

I join in the results attained by the majority but not for the reasons set forth in its opinion. I fail to see how this case turns on the theory of "refusing suitable work" on May 7, 1959, the day on which the employer requested claimants to return to work under threat of replacement. Their status should be determined as of the day they went on strike, April 1, and the day subsequent to the ending of the strike, on which they sought to return to work. I agree that claimants were justified on May 7 in refusing the proffered work in jobs that were vacant because of a labor dispute since under §4 (43 PS §753) this was not suitable work. However, this seems to me to be begging the question as to whether they were otherwise in the category of "voluntary quits."

I favor the view of Justice COHEN as expressed in *Melchick Unemployment Compensation Case*, 396 Pa. 560, 154 A. 2d 875. By the use of the words "work stoppage" the Legislature did not mean that in every instance an entire plant had to be shut down before

the striking employees should be entitled to the benefits of the provisions of §402(b). A reasonable interpretation of that section might include branch, department, section, or even job so long as work was stopped therein by a bona fide labor dispute, whether by all, some, or even one employee.

There is no need to distinguish between stoppage by the plant and stoppage by the employee. In any case, work ceases, as it did in this instance. From the time these employees struck on April 1 until their replacements were hired after the notice to return was sent to them on May 7, there was a work stoppage, regardless of who accomplished it.

The majority indicates fear that a disgruntled employee may leave his job and seek the advantage of the provision under discussion. I have no fear of that because the Bureau and Board of Unemployment Compensation may easily determine whether his acts are those of misconduct to justify his dismissal, or a voluntary termination of his employment, or the result of a bona fide labor dispute.

In this case there is no question about the dispute being bona fide. Therefore, I see no reason to distinguish the 105 striking employees from the total number that were employed in this plant. They exercised their right to strike and the employer exercised its right to replace them. Had ninety-nine percent of the force gone out and the employer replaced them, the situation would have been the same. The only difference in the work stoppage would have been in degree. It would, even then, not have satisfied the majority view that to constitute work stoppage one hundred percent of the plant must strike. To me, this seems unreasonable. These 105 claimants were legitimately out on strike, thereby creating a work stoppage in their departments and on their jobs. The fact that they were replaced is immaterial. Their employer-employee re-

lationship persisted, they were not voluntary quits, and at the end of the strike they were available and able to do suitable work. None was available at their employer's plant; they did not decline any other offers of work; they were otherwise eligible for compensation and should receive it.