372 P.2d 132

In re the Liability of John R. ORBEA, Jr., dba Stockman & Stockman Cafe, Respondent,

For the Payment of Contributions under the Employment Security Law.

Lilah Williams LYMAN, Alleged Employer, Appellant,

v.

EMPLOYMENT SECURITY AGENCY, Respondent.

No. 9010.

Supreme Court of Idaho.

June 7, 1962.

Perce Hall and Robert M. Rowett, Mountain Home, for appellant.

Roberts & Poole, Boise, for respondent, John R. Orbea, Jr.

John W. Gunn, Boise, for respondent, Employment Security Agency.

SMITH, Chief Justice.

Appellant appeals from an order of the Industrial Accident Board, in the matter of the liability of John R. Orbea, Jr., entered January 31, 1961, insofar as such order holds appellant liable, together with John R. Orbea, Jr., jointly and severally, for pay-

ment of employment security excises on wages paid or payable to employees of Stockman Cafe during the period October 11, 1957 to March 16, 1958.

The elements of this controversy arose out of the operation of a business in Mountain Home, Idaho. Prior to January 1, 1957, the business, known as the Stockman and as the Stockman Bar and Cafe, was owned and operated by a partnership, of which John R. Orbea, Jr., was a member. After that time, Mr. Orbea owned and operated the business as a sole proprietor, although the premises were owned by a third party and leased to Orbea. The business consisted of three separate operations within one building: (1) a cafe; (2) a bar and sporting goods business; and (3) a card room, located in the rear of the premises. The operation of the card room is not in issue.

Appellant, Mrs. Lyman, first began working for Orbea in 1956. Some time in December 1956 she became the manager of the bar and sporting goods business, although as an employee on a weekly salary. The cafe then was operated by one Brown, under a verbal lease from Orbea, which Orbea terminated at the end of May 1957.

Upon termination of Brown's lease, Orbea proposed that appellant Mrs. Lyman lease the cafe. Evidence as to the agreement reached and as to the subsequent relationship between the parties is in substantial conflict. Appellant, claiming that she was managing both the cafe and the bar business as an employee of Orbea, testified that she had insisted upon a written lease, and had continued working as Orbea's employee, both as to the cafe and as to the bar, until such time as Orbea should give her a satisfactory written lease. The record does show that she continued to receive wages from June 1957 until October 11, 1957, and the amount of such wages remained the same as she had previously received for management of the bar alone. Orbea inspected the business and its records two or three times a month from June until October. The bank account of the business was carried in the name of the Stockman, and either Orbea or appellant could sign checks.

The period of time with which this appeal is concerned commenced in October 1957. At that time, Orbea, who intended to move to Arizona, again began negotiations with appellant regarding a lease. Again, the evidence as to the results of those negotiations and regarding the subsequent relationship of the parties is in substantial conflict. Appellant contends that she agreed to lease the business provided she should obtain from Orbea a written lease. She contends, however, that she was to continue to manage the business as an employee until she received a satisfactory written lease or until Orbea could sell the business to some third party. Orbea contends that the parties en-

tered into an oral agreement, characterized by him as a "business use agreement," which was later to be reduced to writing, and that appellant operated the business from that time as an independent operator. Orbea then left the state for Arizona, where he remained until March of 1958.

On January 19, 1958, a written agreement of lease was sent to appellant for her signature which, she stated, she found unsatisfactory, and did not sign. She continued to operate the business—as an employee, according to her; as an independent operator, according to Orbea—until March 16, 1958, when Orbea returned and closed the business.

Tax liens for delinquent unemployment security excises were filed against Orbea, who requested a formal determination of liability. The Status Examiner for the Employment Security Agency held Orbea liable for such taxes as the employer of Mrs. Lyman and others who worked at the Stockman from July 1, 1957, to March 16, 1958. Orbea appealed, and hearings were held by the Appeals Examiner of the Employment Security Agency. Thereafter, the Chief of Contributions for the Employment Security Agency, upon the basis of the record and evidence, upon making Findings of Fact and Conclusions of Law, determined that Mrs. Lyman had operated the Stockman Bar and Cafe, not as an independent agent, but as an employee, and that Orbea was liable for all unemployment insurance taxes in connection with the business. Upon appeal to the Industrial Accident Board, a further hearing was held, at which Orbea for the first time appeared and testified, and at which hearing further documentary evidence was introduced. Mrs. Lyman elected to submit the matter on the record, without any further appearance.

Upon the basis of the record before it, and upon the further evidence presented, the Board made the following "Ultimate Findings:"

"During the entire period under consideration the relations between Orbea and Mrs. Lyman were somewhat anamalous and after October 11, 1957, particularly, more in the nature of a joint venture. No definite agreement between them was effected. Whatever the terms of their inchoate or tentative agreement, their relationship was indefinite. Orbea because of the terms of his lease felt inhibited from making a sublease to Mrs. Lyman, since he was satisfied that his lessor, whose approval was necessary, would not approve. He retained the state and federal beer licenses in his name, though Mrs. Lyman secured a renewal of the local municipal license in her capacity as manager. Both retained a measure of responsibility over and control of the business and finally Orbea in winding up the

business took full control. Mrs. Lyman was not strictly an employee after October 11, 1957, and she was not solely the employer. As in the case of a joint venture, both Orbea and Mrs. Lyman are jointly and severally liable for excises on wages paid to others during the period October 11, 1957 to March 16, 1958.

"Whatever the original controversy between the parties as to the period prior to October 11, 1957, the status of the parties was measurably adjusted and reported by Orbea himself. Prior to that date he was the sole owner or proprietor and Mrs. Williams (Lyman) was his employee.

"Beginning with October 11, 1957, until the failing business was closed by unilateral action of Orbea on March 16, 1958, the indefinite status of the parties continued. Orbea was the only one with the license to sell beer. With respect to the cafe, both parties had the right to exercise, and at times each of them did exercise direction and control of the business."

The Board then found:

"Under such circumstances the assessing Agency cannot enter into the merits of their private controversy. It must necessarily leave the parties in the confusion which they themselves created. Orbea is held to be the liable employer for both cafe and bar up to October 11, 1957. After that date he is held to be the liable employer with respect to the bar. With respect to the operation of the cafe after October 11, 1957, both Orbea and Mrs. Lyman are held to be jointly and severally liable as employers for employment security excises."

The Board's Order accordingly modified the decision of the Chief of Contributions.

Appellant, on her appeal herein, urges that the modification of the decision of the Chief of Contributions, holding her jointly and severally liable with Orbea for the employment security excises on the operation of the cafe from October 11, 1957, until March 16, 1958, is not supported by the evidence.

The sole question before this Court is whether the record contains substantial competent evidence to support the Board's order.

Findings of fact of the Industrial Accident Board in a proceeding instituted under the Employment Security Law, when supported by substantial though conflicting evidence will not be disturbed on appeal. Ankrum v. Employment Security Agency, 83 Idaho 274, 361 P.2d 795.

While appellant contends that she operated the cafe during the time in question

as an employee; and Orbea, that she was an independent agent, it does not follow that either arrangement existed between the parties.

The Industrial Accident Board, after examining the record and evidence before it, concluded that the actual arrangement between Orbea and appellant, as regards the operation of the cafe during such time, was neither an employer-employee arrangement nor a lease, but was a joint undertaking. This conclusion is supported not only by the evidence referred to by the Board in its Ultimate Findings, as hereinbefore quoted, but also by both the evidence tending to show that appellant was not Orbea's employee in the operation of the cafe (e. g., she indicated on an Initial Status Report submitted to the Employment Security Agency in June 1957, that she operated the cafe as an independent agent; after October 11, 1957, she kept all the books and had authority to write checks; she received no wages after October 11, 1957, but, as the evidence indicates, she was to receive her compensation from any surplus left after the payment of bills and the payment to Orbea of his set return), and by the evidence tending to show that she was not an independent lessee (e. g., Orbea continued to examine the records of the business and the inventory at regular intervals after June 1, 1957; immediately upon his return from Arizona, and before the business was closed, he again examined the business records;

on March 16, 1958, he closed the business and exercised control over the business property).

Neither the fact that the record contains conflicting evidence, nor that the evidence might support any one of several conflicting inferences, is in any way material to the issue. That it fairly supports the conclusion reached by the Board is sufficient to sustain the Board's finding and order.

The order of the Industrial Accident Board is affirmed. No costs allowed.

TAYLOR, KNUDSON, McQUADE and McFADDEN, JJ., concur.