390 P.2d 822

**Leta E. CZARLINSKY, Plaintiff-Appellant,**

**v.**

**EMPLOYMENT SECURITY AGENCY, State of Idaho, Defendant-Respondent.**

No. 9372.

Supreme Court of Idaho.

March 24, 1964.

Franklin Powell, Boise, for respondent.

Givens, O'Leary, Doane & Givens, Boise, for appellant.

McQUADE, Justice.

Plaintiff-Appellant, Leta E. Czarlinsky, is hereinafter referred to as claimant. Defendant-Respondent, Idaho Employment Security Agency, is hereinafter referred to as the Agency, and the Industrial Accident Board as the Board.

For approximately four years prior to December 28, 1962, claimant, a widow with no children, was selling cosmetics and general drug store merchandise for a drug store. She was paid $1.50 per hour plus commissions for this employment. During the latter part of her employment, her day-time hours of work were from 9:00 a. m. to 1:30 p. m. On two evenings per week she worked from 6:00 p. m. to 10:00 p. m.

Claimant was separated from this employment on December 28, 1962. On January 3, 1963, she applied for work at the local Agency office. She was referred to another drug store operator who was seeking to employ a cosmetic and drug store sales-clerk. Upon arrival at this store, she filled out an employment application and was then interviewed by the prospective employer. The rate of pay was never discussed, but the employer told her that the hours of work would be from 9:00 a. m. to 6:00 p. m. one week and from 12:00 noon to 9:00 p. m. the following week. The claimant told the employer that she preferred not to work nights, whereupon the employer terminated the conversation stating that he had to have someone who would work nights. Upon inquiry by the local office, the employer told the Agency that the claimant had declined to accept the job because it involved night work.

Unemployment compensation benefits were denied claimant in the first instance because she refused an offer of suitable work without good cause. This determination was affirmed by the appeals examiner; however, his decision was not based upon claimant's refusal of an offer of suitable work without good cause, but because claimant had failed to apply for suitable work without good cause. On appeal, the Board entered an order affirming the decision of the appeals examiner denying claimant unemployment compensation benefits. Claimant takes her appeal from the order of the Board.

The Idaho Employment Security Law provides that a claimant is ineligible for benefits if her unemployment is due to her failure without good cause to apply for

available work as directed by a representative of the director, or to accept suitable work when offered to her. I.C. § 72–1366 (h).

The Board's order is predicated upon the following finding of the appeals examiner:

"* * * We must conclude that it was the claimant who initiated the breakdown of this application for work. She must bear the responsibility for the employer's failure to consider her further for the job in the same manner as if she had simply refused to apply for the position."

The question raised on this appeal is whether the evidence supports the Board's finding and decision as a matter of law.

■ The foregoing finding of the appeals examiner is based upon claimant's own testimony as to what occurred during the interview held between her and Mr. Thomas, the prospective employer. Excerpts from that testimony are as follows:

"Q. And I want you to relate, to your best recollection, the conversation that occurred between you and Mr. Thomas on this occasion. Would you say what Mr. Thomas said, and what you said.

"A. Well, after making out my application, he asked, of course, about my sales experience and all which was shown on the application. And then he told me, of course what the work consisted of—that it was in the cosmetic department. And then he went on to relate that the hours would be nine till six one week; twelve to nine the following week. And then I told him that I preferred not working nights. And he asked the reason why and I told him it was because I had a home and I had a dog that had to have care for it, and I didn't care to be out after night hours, that I hadn't worked night hours and I preferred not working nights if I could possibly find something that—that I didn't have to.

"Q. But did you ever, at any course in the interview, say that you would *not* work nights?

"A. No.

"Q. You did not. You said you *preferred* not working nights?

"A. That's right.

"Q. And what occurred after you made this statement?

"A. Well, he said that that would close our conversation; that he had to have someone that would work nights.

"Q. Did he give you an opportunity to explain any further with regard to your preference for day work?

"A. Well he asked me. I just told him that I did have my home and that

I had a dog that had to have care—should have care, and I didn't like to be out after—nights, particularly, in bad weather.

"Q. In the course of the conversation you had with Mr. Thomas, did he any time offer you a position?

"A. He did not.

\*  \*  \*  \*  \*  \*

"Q. Now when you talked with Mr. Thomas at Ballou-Latimer Drug, as I understand it, when he mentioned the hours that you would be working alternate weeks, you've indicated that you preferred not to work in the evening?

"A. I just told him that I preferred not working nights.

"Q. I see.

"A. And that was all that I did say.

"Q. What did he say then?

"A. He said, well, that this particular job, they had to have someone do it alternate weeks.

"Q. And then what happened?

"A. He said, 'Well, that terminates our conversation.'

"Q. How did you respond?

"A. Well, I thanked him and told him that if I found it was possible for me to work nights, that I would be very happy to let him know. And he said, well, it made no difference, he had two other applicants, anyway.

"Q. I see.

"A. And that was all.

"Q. Did you suggest at that time that this was simply a preference, but that you actually were willing to work nights?

"A. I didn't tell him that I would or that I wouldn't. I just said I preferred not working nights."

■ Claimant's testimony before the Industrial Accident Board differed somewhat from that given the appeals examiner; however, the Board's finding that the claimant initiated the breakdown in the job interview is fully supported by the evidence. As noted above, claimant gave her prospective employer the impression that she would not have accepted a job even if it had been offered. Though she had ample opportunity to dispel this concept, she failed to do so; "I thanked him and told him that if I found it was possible for me to work nights, I would be very happy to let him know." Findings of fact of the Board in a proceeding instituted under the Employment Security Law, when supported by substantial, competent evidence will not be disturbed on appeal. Ramsey v. Employment Security Agency, 85 Idaho 395, 379 P.2d 797 (1963), Bean v. Employment Security

Agency, 81 Idaho 551, 347 P.2d 339 (1959), In re Walker's Claim, 80 Idaho 420, 332 P. 2d 199 (1958).

■ If claimant had actually been offered the job for which she was interviewing and had subsequently refused the offer, there would be no doubt of her ineligibility for unemployment benefits. She would have refused an offer of suitable employment. In re O'Toole's Claim, 81 Idaho 370, 341 P.2d 197 (1959). Claimant's desire to restrict her employment to daytime hours because she had a dog and did not wish to be out nights does not constitute good cause for refusing to make a reasonable effort to secure employment. I.C. § 72–1366(h). In re Stadler, 278 App.Div. 719, 103 N.Y.S.2d 213 (1951), Beall v. Bureau of Unemployment Compensation, 101 N.E.2d 780 (Ohio App., 1951).

■■ The claimant argues that she applied for suitable work at the time and in the manner prescribed and that the position was not offered to her, and therefore she cannot be considered to be ineligible for compensation under I.C. § 72–1366(h). It is to be remembered, however, that the Employment Security Act is designed to alleviate economic insecurity and to relieve hardships resulting from involuntary unemployment. It was intended to provide benefits for those unemployed under prescribed conditions who are willing and able to work but unable to secure suitable employment on the labor market. Johns v. S. H. Kress & Co., 78 Idaho 544, 307 P.2d 217 (1957). It would be a frustration of legislative intent to allow benefits to a claimant who fails to make a reasonable effort to secure employment. We have held in a similar context that the element of good faith is an essential ingredient of good cause. Roby v. Potlatch Forests, Inc., 74 Idaho 404, 263 P.2d 553 (1953). It is essential that a claimant who is being interviewed for possible employment must evidence good faith in attempting to cultivate the job opportunity.

Various jurisdictions have developed different means of dealing with the situation presented herein. Pennsylvania, which appears to be the leading jurisdiction in this area, requires that its claimants display good faith when they are interviewed for employment. If they discourage a prospective employer, the claimants are treated precisely as if they had received and refused an offer of suitable employment. See: Maribello v. Unemployment Compensation Board of Review, 200 Pa.Super. 330, 188 A. 2d 861 (1963), in which claimant was denied benefits because he indicated at the job interview that he was awaiting recall from his former employer and further that he would not like to wear the required uniform for the prospective job; Bradley v. Unemployment Compensation Board of Review, 198 Pa.Super. 356, 181 A.2d 894 (1962), in which claimant was denied benefits because

she indicated at the job interview that she intended to leave on a vacation with her husband within a few days; Lorenzi v. Unemployment Compensation Board of Review, 197 Pa.Super. 573, 180 A.2d 84 (1962), in which claimant was denied benefits because he indicated at the job interview that he expected twice the offered salary; Gavlick v. Unemployment Compensation Board of Review, 197 Pa.Super. 621, 179 A.2d 926 (1962), in which claimants were denied benefits because they indicated at the job interview that they would return to their former employment if they were recalled; Brennan v. Unemployment Compensation Board of Review, 192 Pa.Super. 308, 162 A.2d 31 (1960), in which claimant was denied benefits because she indicated at the job interview that she thought she was pregnant and wanted to wait until her physician returned before committing herself to employment; Trabold v. Unemployment Compensation Board of Review, 191 Pa.Super. 485, 159 A.2d 272 (1960), in which claimant was denied benefits because he indicated at the job interview that he would accept a recall to his last employment if it were offered to him and further that he did not think he could do the work offered; Weiland v. Unemployment Compensation Board of Review, 167 Pa.Super. 554, 76 A.2d 457 (1950), in which claimant was denied benefits because she indicated at the job interview that she would take two days off whenever her husband was home.

In Lowell v. Maine Employment Security Commission, 159 Me. 177, 190 A.2d 271 (1963), the Maine court appeared to follow Pennsylvania's reasoning as they held that a claimant who told her prospective employer that she would stay only until a hoped-for job materialized, had "refused to accept an offer of suitable work."

Massachusetts follows another approach. In Corrado v. Director of Division of Employment Security, 325 Mass. 711, 92 N.E. 2d 379 (1950), claimant was denied benefits because she told her prospective employer that she didn't think she'd enjoy working in a large office. The court's decision, however, was based upon statutory provisions comparable to I.C. § 72–1366(e) requiring a claimant to be *available* for suitable work. The Massachusetts court stated, 92 N.E.2d at page 380:

"It cannot be said that there was error of law or arbitrary conduct on the part of the board. (citations omitted) Unemployment benefits are not for those who would be engaged in suitable employment if they were willing to work rather than to remain idle. (citations omitted) A claimant must be capable and available for work and ready and willing to obtain suitable employment. He must act in good faith and make reasonable effort to secure employment which he is qualified by experience and training to perform.

His mental attitude toward the employment as evidenced by his conduct must be considered. * * *"

The Board's approach to the problem at hand is relatively unique. However, there is no error in the Board's decision.

Judgment affirmed. No costs allowed.

KNUDSON, C. J., and McFADDEN, TAYLOR and SMITH JJ., concur.