401 P.2d 817

Teodoro **TOTORICA**, Claimant-Respondent,
v.
**WESTERN EQUIPMENT CO.**, Defendant-Appellant,
and
**Employment Security Agency**, Defendant-Respondent.
No. 9553.

Supreme Court of Idaho.
May 4, 1965.

Eli A. Weston and Richard E. Weston, Boise, for appellant.

536

Frank H. Powell, counsel for Employment Security Agency, Boise, for respondent.

McFADDEN, Justice.

This appeal presents a question that has not previously been before this Court for decision and involves the application of I.C. § 72–1366(j) to a claimant who is not working by reason of a strike which involved his employer. All parties agree that the strike involved was a "labor dispute" as referred to in the subsection of the statute.

Claimant, Teodoro Totorica, had been employed by the appellant Western Equipment Company, herein referred to as "the company", in its shop as an equipment steam cleaner and painter. Claimant was a member of a union that was engaged in negotiations with the company concerning a labor contract. The negotiations were unsuccessful, and at a meeting of the union a strike was called. Following notice to the company, the shop employees struck the plant on October 2, 1963. The strike continued for about six weeks. The day after the strike began, claimant was notified by a letter from an Attorney representing the company, he could have his job back if he returned to work immediately. Claimant did not reply to this letter nor did he return to work. Three weeks later, the company informed claimant's union that claimant and another employee had been replaced as of October 22; which information was communicated to claimant. On approximately October 10, the company commenced hiring new employees to replace the 16 employees on strike, and by October 15, the company had hired approximately nine new men.

On November 1, 1963, claimant filed his initial claim for benefits under the Employment Security law which claim was denied. On appeal from this determination the Appeals Examiner of the Employment Security Agency reversed the initial determination, holding that the discontinuance of work by the claimant was not a severance of the employment relationship, and thus, he could not be held to have left his employment voluntarily without good cause as

provided by I.C. § 72–1366(f).[1] The Appeals Examiner further held that from and after October 2, 1963, the day of the strike, there was a "stoppage of work" which existed because of a labor dispute and hence by reason of I.C. §. 72–1366(j)[1], claimant was ineligible for benefits during the work stoppage. However, the Appeals Examiner found that this work stoppage terminated on October 15, 1963, and that claimant was eligible for benefits after that date.

The company appealed the Appeals Examiner's determination to the Industrial Accident Board, which by order affirmed the previous determination and this appeal was taken from the Board's order. In this appeal the company first claims the Board erred in interpreting "stoppage of work" as used in I.C. § 72–1366(f) as applying to a stoppage of work in the employer's plant rather than a cessation of work by the employee-claimant.

The Board interpreted and applied "stoppage of work", in the same manner as did the Appeals Examiner, who stated, "The phrase 'stoppage of work' is to be interpreted as meaning a stoppage of an employer's operation rather than the cessation of the worker's labors". In the Board's conclusions of law it is stated:

"That a substantial work stoppage existed at the plant where the normal employment relationship occurred, * * *. That from and after October 15, 1963, the work stoppage terminated and the employer returned to substantially normal operation but the labor dispute did not necessarily ter-

1. Portions of I.C. § 72–1366 pertinent here are:

"The personal eligibility conditions of a benefit claimant are that—

"(a) * * *

"(b) * * *

"(c) * * *

"(d) * * *

"(e) * * *

"(f) His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment. * * *

"(g) * * *

"(h) * * *

"(i) * * *

"(j) A benefit claimant shall not be eligible to receive benefits for any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute; provided, that this subsection shall not apply if it is shown that—

"(1) He is not participating, financing, aiding, abetting, or directly interested in the labor dispute which caused the stoppage of work; and

"(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or directly interested in the dispute."

-minate at that time. That the claimant, after October 15, 1963, was not unemployed 'due to a stoppage of work which exists because of a labor dispute', but was unemployed due to a labor dispute only; therefore, the claimant was not rendered ineligible for benefits under I.C. 72–1366(j)."

The company asserts that this interpretation is incorrect, and in support of its contention cites the cases of Board of Review v. Mid-Continent Petroleum Corp., 193 Okl. 36, 141 P.2d 69, (1943), and Miners in General Group v. Hix, 123 W.Va. 637, 17 S.E.2d 810, (1941). The Supreme Court of Oklahoma in the Mid-Continent Petroleum case, supra, stated "* * * (that) the word 'work' ordinarily refers to or comprehends the activities of the workman, not the operation of a factory." In the West Virginia case of Miners, etc., v. Hix, supra, cited by the Oklahoma Court in the Mid-Continent Petroleum case, it is stated:[2] "The statute quoted above applies to the individual worker, and, generally speaking, a 'labor dispute' can only exist between the individual workers and their employer." That court did not attempt to interpret the phrase "stoppage of work", for the issue before the court was whether a labor dispute existed after the termination of a contract with the union.

The respondent agency, on the other hand, urges that the phrase "stoppage of work" has reference to the stoppage of work in the employers establishment, and not by reason of the individual work of the employee being in a state of cessation by reason of the strike, and cites the following: Cumberland and Allegheny Gas Company v. Hatcher, 130 S.E.2d 115 (W.Va.1963); Erie Resistor Corp. v. Unemployment Comp. Bd. of Rev., 194 Pa. Super. 307, 167 A.2d 321 (1961); Monsanto Chemical Company v. Thornbrough, 229 Ark. 362, 314 S.W.2d 493 (1958); Producers Produce Co. v. Industrial Commission, 365 Mo. 996, 291 S.W.2d 166 (1956); Robert S. Abbott Publishing Co. v. Annunzio, 414 Ill. 559, 112 N.E.2d 101 (1953); Ablondi v. Board of Review, 8 N.J.Super. 71, 73 A.2d 262 (1950); M. A. Ferst, Limited v. Huiet, 78 Ga.App. 855, 52 S.E.2d 336 (1949); Carnegie-Illinois Steel Corp. v. Review Board, Etc., 117 Ind.App.

2. Subsection 4, Section 4, Article 6, West Virginia Unemployment Compensation Act, Chapter 1, Acts of Legislature, Second Extraordinary Session, 1936:
"Upon the determination of the facts by the director or his deputy, an individual shall be disqualified for benefits:

* * * (4) For a week in which his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he was last employed, * * *."

379, 72 N.E.2d 662 (1947); Sakrison v. Pierce, 66 Ariz. 162, 185 P.2d 528, 173 A.L.R. 480 (1947); Lawrence Baking Co. v. Michigan Unemployment Comp. Comm., 308 Mich. 198, 13 N.W.2d 260, 154 A.L.R. 660 (1944); Magner v. Kinney, 141 Neb. 122, 2 N.W.2d 689 (1942); In re Steelman, 219 N.C. 306, 13 S.E.2d 544 (1941).

In Monsanto Chemical Company v. Thornbrough, supra, the Supreme Court of that state was faced with an issue similar to the one in the instant case. There the court stated:

"The issue turns upon what is meant by the phrase, 'a stoppage of work.' These words appear in the unemployment acts of many other states and have been frequently construed. It could be argued that the language refers to a cessation of work on the part of the employee, in which case the phrase would be synonymous with unemployment. That construction was in fact adopted in Oklahoma, but there the rule was later changed by an amendment to the statute.

"Elsewhere it has been pointed out that the Oklahoma view makes the reference to a stoppage of work meaningless, for the statutory sentence has already mentioned unemployment and presupposes the existence of that condition. See Williams, 'The Labor Dispute Disqualification,' 8 Vanderbilt

L.Rev. 338; Sakrison v. Pierce, 66 Ariz. 162, 185 P.2d 528, 173 A.L.R. 480. Consequently the view is now generally accepted that the stoppage of work means a cessation of business activity at the employer's establishment rather than unemployment on the part of the applicant for benefits. The authorities were reviewed in Robert S. Abbott Pub. Co. v. Annunzio, 414 Ill. 559, 112 N.E.2d 101, where the court observed that the majority interpretation is followed in nineteen states, while the minority rule has been applied administratively in Colorado and judicially in Oklahoma."

In Robert S. Abbott Pub. Co. v. Annunzio, cited in the foregoing quotation, supra, the Supreme Court of Illinois stated:

"The term 'stoppage of work' as used in the statute and in the various decisions of this court seems to clearly refer to the stoppage of work of the plant or particular department of the plant and not to the individual unemployment of the worker or workers. The provisions of section 7(d) are a substantial re-enactment of the English National Insurance Act of 1911, and the language of this section has received a settled construction by the English Authorities charged with the administration of the English act prior to the adoption of it by Illinois. Under

the British interpretation of the word 'stoppage,' the individual is disqualified for benefits if his unemployment is due to a trade dispute so long as the job which he held continues to be vacant."

Appellant, admitting that the cases relied upon by the respondent agency, present a view contrary to that urged by it, points to a dissimilarity of the statutes involved in those cases from I.C. § 72–1366(j). The difference between the Idaho statute and those involved in the other cases is that while the Idaho statute is denying eligibility for benefits for a claimant during any week when his "unemployment is due to a stoppage of work which exists because of a labor dispute; * * *", the other statutes contained an additional phrase comparable to the following italicized quotation, so as to establish ineligibility for benefits for a claimant during the period when his "unemployment is due to a stoppage of work which exists because of a labor dispute *at the factory, establishment, or other premises, etc., * * *"*. Appellant then argues that these additional words limit and refer directly to the phrase "stoppage of work" and since the Idaho Section of the Statute does not employ such language or make reference to the "factory, establishment, or employer's premises," the Idaho legislature in employing the term "stoppage of work" had reference to the cessation of the employees work, and not to cessation of the employer's business.

Idaho appears to be the only state which does not use the qualifying clause of "factory, establishment, or premises," or words of similar import. However, it is our conclusion that such words of limitation as employed in the statutes from the sister states, has reference to and limits the place where the "labor dispute" occurs, and not to the phrase "stoppage of work." See: 28 A.L.R.2d 287 at 324.

■ It is difficult for us to accept the appellant's contention that "stoppage of work" has reference to cessation of work by the employee. If we accept such meaning, the statute in effect then would be read: "A benefit claimant shall not be eligible to receive benefits for any week with respect to which it is found that his unemployment is due to *an unemployment* which exists because of a labor dispute." The more logical and reasonable interpretation is that contended for by respondent agency, and which has been followed by the majority of the jurisdictions presented with the problem. Inter-Island Resorts, Ltd. v. Akahane, 46 Haw. 140, 377 P.2d 715, (1962); Sakrison v. Pierce, 66 Ariz. 162, 185 P.2d 508, 173 A.L.R. 480 (1947); and cases cited by respondent set out above.

■ In considering our present law, it should be noted that a 1939 amendment to the Unemployment Compensation Law provided that a benefit claimant would be disqualified for any period of time during

which his unemployment was due to a *"then existing labor dispute."* S.L.1939 ch. 239, § 3, p. 568 at 569. However, in 1947 the Idaho Legislature enacted the Employment Security Law which repealed and superseded the old Unemployment Compensation law. S.L.1947, ch. 269, § 66 p. 793 at 832. The new act provides that a claimant will be disqualified from receiving benefits if his unemployment is due to a *"stoppage of work which exists because of a labor dispute."* (See footnote 1, supra). When a statute is amended, it is presumed that the legislature intended it to have a meaning different from that accorded to it before the amendment. Pigg v. Brockman, 79 Idaho 233, 314 P.2d 609.

Appellant further assigns as error the failure of the Board to conclude that a claimant who leaves his employment pursuant to a strike has "left his employment voluntarily", "without good cause" within the meaning of I.C. § 72–1366(f). A similar contention was presented to the Supreme Court of Hawaii in the case of Inter-Island Reports, Ltd. v. Akahane, supra. The reasoning of that court, and conclusion reached on that point is, in our opinion, sound and should be followed. There, the court stated:

"Moreover, the terms 'leaving work' or 'left his work' as used in unemployment compensation laws refer only to a severance of the employment relation and do not include a temporary interruption in the performance of services. * * * Absence from the job is not a leaving of work where the worker intends merely a temporary interruption in the employment * * * relation. Such is the case of strikers who have temporarily interrupted their employment because of a labor dispute. Under the prevailing view, they have not been deemed to have terminated the employment relationship and the voluntarily leaving disqualification has no application to them."

See also: T. R. Miller Mill Company v. Johns, 261 Ala. 615, 75 So.2d 675 (1954); Mark Hopkins, Inc. v. California Employment Com'n., 29 Cal.App.2d 495, 151 P.2d 229, 154 A.L.R. 1081 (1944); Knight-Morley Corp. v. Michigan Employment Sec. Com'n., 352 Mich. 331, 89 N.W.2d 541 (1958); Marathon Electric Mfg. Corp. v. Industrial Com'n., 269 Wis. 394, 69 N.W.2d 573 (1955).

The final assignment of error is directed to the board's finding that after October 15, 1963, there was no longer a "stoppage of work" at the employer's plant. Appellant contends there was no evidence to support such finding. We cannot agree with this assertion, for Mr. Wenzel, the

general service manager of appellant testified before the Board:

"Q. After the strike, did the company attempt to operate?

"A. Yes, the shop foreman and myself attempted to take care of emergency work. We were not able to take care of any field work, however. This was just on a very limited basis—what customers could bring in to us to get their equipment moving again. * * *

"Q. Then did you start to bring back your mechanics and your classified workers in the shop?

"A. We, after eight days, we started hiring people that we felt were qualified to fill those required jobs.

"Q. Can you tell us approximately when, if ever, the job that was held by Mr. Totorica was filled?

"A. Yes, I hired a fellow to do the steam-cleaning and painting on November 7, 1963.

"Q. * * *

"Q. Was your shop operating other than on an emergency basis on October 15?

"A. October 15th—I believe about five at that point."

Mr. Wenzel, had previously testified before the Appeals Examiner:

"Q. Can you give me any idea as to when the remainder of staff was replaced?

"A. Ted was pretty close on that. We hired two right after our letter indicated that we would start hiring. On the 8th we hired two, and I hired them as rapidly as satisfactory employees were available thereafter, and I had eight or nine I would say by the 15th of October. I've hired only two since.

"Q. I see. There was actually a decrease in staff somewhat and * *

"A. The workload was somewhat lighter and it wasn't necessary to have as many people as it had been prior to the strike."

Claimant Totorica testified before the Appeals Examiner that within a week after the strike was called, he observed that the company commenced hiring new employees and within three weeks there had been approximately seven or eight new employees.

A work stoppage is deemed to have ended when the employer resumed substantially normal operations. Inter-Island Resorts, Ltd. v. Akahane, supra. When appellant resumed substantially normal operations is a question of fact for

**544**

the Board. The record is sufficient to sustain the Board's findings that appellant after October 15, 1963, had continued a substantially normal operation with a reduced force and such finding will not be disturbed on appeal. Czarlinsky v. Employment Security Agency, 87 Idaho 65, 390 P.2d 822; In re Orbea, 84 Idaho 298, 372 P.2d 132.

The order of the Industrial Accident Board is affirmed.

No costs allowed.

McQUADE, C. J., and SMITH, J., concur.

TAYLOR, Justice, with whom KNUDSON, J., concurs (dissenting).

I disagree with the construction adopted in the majority opinion of the phrase, "stoppage of work" as used in our statute, I.C. § 72–1366(j). The language of that subsection is clear and unambiguous. It needs no construction. It provides:

"(j) A benefit claimant shall not be eligible to receive benefits for any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute; * * *."

In this case the record will not support any other conclusion than that claimant's unemployment was due to a stoppage of work which existed because of a labor dispute. The majority opinion imports from the statutes of other states the phrase, "at the factory, establishment, or other premises at which he is or was last employed", and in effect amends our statute by including such language therein. The great similarity of the unemployment compensation laws of the various states indicates a common source. The fact that our legislature refused to adopt the language last above quoted should not be regarded as accidental. Its omission should be accorded some significance, and the omission should not be supplied by construction. The statutes in the jurisdictions cited by the majority contain the language omitted by our legislature. It will suffice to call attention here to the specific terms of the statutes in two jurisdictions highly regarded in the majority opinion. The statute of Arizona, under which the decision in Sakrison v. Pierce, 66 Ariz. 162, 185 P.2d 528, 173 A.L.R. 480 (1947) was written is as follows:

"(d) For any week with respect to which the commission finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute, strike or lock-out at the factory, establishment, or other premises at which he is or was last employed * * *." Arizona Employment Security Act, § 56–1005 (d).

The provision of the Hawaiian statute construed in Inter-Island Resorts, Ltd. v. Akahane, 46 Haw. 140, 377 P.2d 715 (1962) is as follows:

"(d) Labor dispute. For any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed; * * *." R.L.H.1955, § 93-29(d). (Not set out in the opinion).

We observed the same distinction between the Utah statute and our own in Ankrum v. Employment Security Agency, 83 Idaho 274, 361 P.2d 795 (1961).

In addition "stoppage of work" has another important connotation. It was used in contradistinction to "unemployment" to preserve the employer-employee relationship in cases where the work was interrupted by a strike or lock-out.

In this case the record shows that claimant was an employee of the employer Western Equipment Co. from October 2, 1963, when the strike commenced, until October 24, 1963, when his union was notified by the employer that his job had been filled by a permanent replacement. During that time his "unemployment" was due to a stoppage of work which existed because of a labor dispute, and he was not eligible for benefits. The record further shows that the strike and labor dispute continued until November 22, 1963. In my opinion, claimant did not become eligible for benefits until October 24th, when the relationship of employer and employee was terminated by the action of the employer in permanently replacing him.

The majority opinion is also in error in concluding that the words of limitation found in the statutes of other states "has reference to and limits the place where the 'labor dispute' occurs, and not to the phrase, 'stoppage of work'." In other states where the qualifying phrase is added to the statute, the courts hold that the "stoppage of work" refers to the "factory, establishment, or employer's premises." Actually a labor dispute, by its very nature, can have no particular situs, unless it be the community where the business of the employer is carried on. Such a dispute could no more exist at the factory or establishment of the employer, than it could at the headquarters of the union or at the homes of the employees or the homes of the management.

The order appealed from should be reversed as to the construction of the statute adopted therein, and modified so as to limit claimant's unemployment benefits to the period following October 24, 1963.