597 P.2d 1074

**William T. HOLLOWAY–COOK and others, SSA 534–32–8948, Claimants-Appellants,**

v.

**ALBERTSON'S, INC., Defendant-Respondent,**

**and**

**Department of Employment, Defendant-Appellant.**

**No. 12680.**

Supreme Court of Idaho.

July 24, 1979.

William T. Holloway-Cook, pro se.

David H. Leroy, Atty. Gen., R. LaVar Marsh, Roger B. Madsen, Deputy Attys. Gen., Boise, for defendant-appellant.

George A. Greenfield, of McClenahan & Greenfield, Boise, amicus curiae for Idaho State AFL–CIO.

Robert L. Miller, Boise, for defendant-respondent.

Robert L. Bilow, Hawley, Troxell, Ennis & Hawley, Boise, amicus curiae for Idaho Ass'n of Commerce and Industry.

Before SHEPARD, C. J., BAKES and BISTLINE, JJ., and SCOGGIN and DUNLAP, JJ., Pro Tem.

PER CURIAM:

Without prior notice to the affected employees, in October, 1976, Albertson's decided to reduce the size of its work force. The employees were each kept on the payroll for various periods of one to five weeks, but were not required to report for work. Each employee was paid his regular salary, with the duration of this arrangement continuing on in accordance with each employee's vacation entitlement plus an additional week's pay for each year of service in the company. Payroll taxes were withheld as usual; other fringe benefits such as life and medical insurance were continued in effect until the payments ceased.

Although Albertson's elected to pay the sums on a weekly basis, at the same rate as the employee's salary before termination, any employee who obtained a new job before the weekly payments ended was paid in a lump sum. Other than accrued vacation, these payments were not required by any contract, but were gratuitous on Albertson's part. The company did not consider the payments as a gift. Several justifications advanced for making such payments, including the humanitarian motives of providing an earnings cushion during the transition from one job to another, and recognition of past services. More practical motives included maintaining the morale of continuing employees and obtaining occasional assistance from terminated employees when problems were encountered by those assuming the duties of former employees.

The Department of Employment (DOE) held the claimants eligible for unemployment compensation. Albertson's appealed and a senior appeals examiner affirmed. Albertson's appealed to the Industrial Commission. Reversing, the Commission held the claimants ineligible for benefits until all payments were exhausted. The DOE appealed. We affirm.

We are unable to distinguish the facts of this case from a situation where an employer may, for various and sundry reasons, maintain an employee on the payroll without requiring the performance of services. Nor are we shown any compelling reason or rationale why the practice here initiated by Albertson's should be discouraged. At most, the only objection might be that of some employees who envied fellow employees who were able to find other employment, and hence gain the "benefit" of the termination pay in a lump sum. None has objected, and indeed may have recognized the desirability of receiving such emoluments as arranged by Albertson's.

There were sufficient indicia of employment present here for the Industrial Commission to find, as it did,[1] that claimants were still employed until payments

---

[1] Commission Findings No. VI and VII:
  "The employer continued all fringe benefits during the period the claimants remained on the payroll, including health and welfare benefits, medical, dental, life and disability insurance, and credit for pension benefits. The vacation and severance pay was treated in the same manner as regular wages, and was subject to the usual payroll deductions for social security and state and federal income taxes. The employer also paid state and federal unemployment insurance taxes on these payments.

  "On the basis of the facts presented in this case, *the Commission finds that the claimants employment actually terminated on the date that vacation and severance pay ceased.* This conclusion is founded primarily upon the claimants continuation upon the employer's payroll during this period with retention of all fringe benefits."

ceased, at which time unemployment benefits would then be available if other employment had not been obtained in the interim. Findings of fact by the Industrial Commission are binding upon this Court when sustained by competent evidence, this being so notwithstanding that the Commission did not see or hear the witnesses, but was presented as here with a cold record. *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978).

Affirmed. Costs to respondents.

Conclusion of Law No. V:
"The claimants' periods of unemployment commenced on their termination dates, which are the dates vacation and severance

pay expired for each individual. They were not eligible for unemployment insurance benefits prior to their termination dates."