624 P.2d 396

Steven P. GRAY, Claimant-Respondent,

v.

**BRASCH & MILLER CONSTRUCTION CO., Employer, Defendant-Respondent,**

and

**State of Idaho, Department of Employment, Defendant-Appellant.**

No. 13423.

Supreme Court of Idaho.

Feb. 10, 1981.

David H. Leroy, Atty. Gen., R. LaVar Marsh, Deputy Atty. Gen., Boise, for defendant-appellant.

Steven P. Gray, pro se.

McFADDEN, Justice.

Gray worked for Brasch & Miller Construction Company as a concrete finisher at various times since early 1977. He attended Idaho State University between the periods he worked. Gray first started work in May, 1977, and worked through January, 1978, at which time he left for school. He returned and resumed working for Brasch & Miller in June, 1978, staying through late August. He then left again for Idaho State. Gray completed the requirements for a degree on December 21, 1978 and returned to Boise to again work for Brasch & Miller but found that their operations had ceased around the second week in December due to weather conditions. Gray started working for them again around January 22, 1979.

Gray filed a claim for unemployment compensation on January 4, 1979, with an effective date of December 31, 1978. A determination was issued by the Department of Employment on January 19, 1979, declaring Gray ineligible on the grounds that he had voluntarily left employment without good cause. See I.C. § 72–1366(e) *infra*. Gray protested and a redetermination was issued February 5, reaffirming the

decision. Gray filed further appeal, and the Department's appeals examiner issued a decision in March again reaffirming the determination of ineligibility.[1]

Gray filed a request for review with the Industrial Commission and hearing was held in May, 1979. The Commission issued an order in June reversing the appeals examiner's decision and held Gray eligible.[2]

## 1. "FINDINGS OF FACT

. . . . .

During the past several years, the claimant has worked as a cement finisher. He has also been attending school at Idaho State University in Pocatello, Idaho. The claimant's first period of employment with the interested employer began May 15, 1977, continuing through January 5, 1978. He attended school to the end of the semester, then resumed employment on or about June 10, 1978. Approximately one and a half months prior to leaving, the claimant advised the employer he expected to resume his education in September. His last day of work was approximately August 25, 1978. The claimant again started attending classes September 5, 1978. He completed requirements for a degree on December 21, 1978.

During the interim, the claimant contacted the employer in November, while home on Thanksgiving vacation. Work by the employer continued until approximately the second week of December. When the claimant returned, no work was available because of weather conditions. He was rehired starting approximately January 22, 1979, and was so employed at the time of the hearing.

The claimant testified that it was not accurate to state that he had voluntarily quit. It was more a leave of absence, as he had agreed to return to work.

The employer testified that when the claimant returned, there was a lack of work, which was the cause of his unemployment.

CONCLUSIONS

Evidence in the record established that the claimant has had intermittent employment with the interested employer interspersed with periods of attendance at school until he earned a degree. When the claimant left for the last semester at college, there was still work in progress continuing almost to the time he was ready to return. To state that the claimant was then unemployed due to lack of work does not go to the point. In actuality, the claimant's unemployment started the day he left the job to attend school, even though such arrangement was acceptable to the employer, and he would be rehired upon return if work was in progress.

Considered from another point of view, if the claimant was on leave of absence, there was no severance of the employer/employee relationship; therefore, he could not be considered unemployed.

The record clearly shows that the claimant had established a pattern of attending school when it was least likely to interfere with his employment; however, it cannot be overlooked that when it was necessary to make a choice of one or the other, the claimant chose to attend school. It is therefore concluded that such was the reason for the leaving of work, which is not considered good cause for unemployment insurance purposes."

## 2. "FINDINGS OF FACT

. . . . .

II

The claimant voluntarily left his employment with Brasch & Miller Construction on about August 25, 1978 in order to return to college in Pocatello. He planned to graduate after attending for one semester. The claimant and the employer agreed that he would return to work for it when the semester ended in December.

III

The claimant finished the semester on about December 21, 1978. But he could not return to work for the employer at that time because the employer had temporarily ceased its operations and laid off its workers due to weather conditions.

CONCLUSIONS OF LAW

I

In order to be eligible for unemployment benefits, the claimant must meet the personal eligibility conditions of *Idaho Code*, Section 72–1366(e) which requires, *inter alia*, that 'His unemployment is not due to the fact that he left his employment voluntarily without good cause....'

II

The appeals examiner found that the claimant did not have good cause for leaving his employment. However, it is not necessary to reach the question of good cause for leaving employment. The words 'due to' in *Idaho Code*, Section 72–1366(e) require that the claimant's unemployment be caused by his voluntary leaving of his employment. In this case, when the claimant originally left his employment to attend school, his unemployment was so caused. But after the semester was over, he could not return to work because the employer

The Commission's decision is predicated upon I.C. § 72–1366, which states in pertinent part:

"*Personal eligibility conditions.*—The personal conditions of a benefit claimant are that—

" . . . .

(e) His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment."

The Commission found it unnecessary to reach the appeals examiner's finding that the respondent left without good cause.

We find it unnecessary to reach the question of the characterization of the events "due to" which Gray's unemployment occurred. The determinative language in the above quoted section is the phrase "left his employment." This language contemplates termination or severance of the employment relationship. This was apparent in *Totorica v. Western Equipment Co.*, 88 Idaho 534, 542, 401 P.2d 817, 821 (1965), where the court stated that the terms "leaving work" or "left his work" as used in unemployment compensation law refer to a "severance of the employment relation." This statement was followed in *Coates v. Bingham Mechanical & Metal Products, Inc.*, 96 Idaho 606, 607–8, 533 P.2d 595, 596–7 (1975), where it was additionally noted that severance is a matter of intent. Reference also could be made to *Pyeatt v. Idaho State Univ.*, 98 Idaho 424, 565 P.2d 1381 (1977), and to *McMunn v. Dept. of Public Lands*, 94 Idaho 493, 491 P.2d 1265 (1971), where in discussing the "good cause" portion of I.C. § 72–1366(e), the court noted the essential "termination" of the employment relationship which must precede such a discussion.

Under the facts here, were Gray to have attempted to claim benefits during the fall semester of 1978, he would have been faced with the counter-argument that he had not been terminated and was still employed and thus ineligible, a situation comparable with that found in *Holloway-Cook v. Albertson's, Inc.*, 100 Idaho 384, 597 P.2d 1074 (1979). The uncontradicted and unimpeached testimony of both employer and employee clearly indicates that Gray's attendance at Idaho State was in the nature of a "leave of absence" from work. The Department of Employment's rules on unemployment compensation state:

"A claimant on leave of absence or vacation is employed and not eligible for benefits. Ref.Sec. 72–1366 *Idaho Code.*" Rule 202–18.1

The record indicates that, while variously characterized, the employer and the respondent agreed on a leave of absence situation. This uncontroverted testimony, taken in conjunction with the quoted rule and the case law requiring severance of the employment relationship as a prerequisite to unemployed status, is indicative that the Commission's finding of termination in August 1978 is without foundation. *See* I.C. § 72–1368(i); I.C. § 72–732; *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978). Since Gray was always employed until that point in December when he appeared ready to reassume active employment status and found that he could not, due to the weather, only one unemployment resulted, and that unemployment was not of the nature to make claimant ineligible for benefits under the statute.

By reason of our holding, the issues raised by the Commission's reliance upon the "due to" language of the statute to resolve this case need not be addressed.[3]

---

had ceased its operations and laid off its employees. Even if the claimant had not left his employment to return to school, he would have been unemployed when the employer ceased its operations. Thus, the claimant's unemployment was not due to the fact that he voluntarily left his employment, so he is eligible for unemployment benefits."

3. The *Andersen v. Brigham Young Univ.*, 101 Idaho 737, 620 P.2d 310 (1980), situation is distinguishable from that involved here as substantial and competent evidence there supported the finding that Andersen did terminate his employment at the earlier point in time. That unemployment was "causal" in the contemplation of the statute, and it was determined that he had at that time left his employ-

While the Commission is correct in assuming that the "causal" unemployment (if there be more than one "unemployment" involved) is determinative of the question of eligibility, such a determination is not required where, as here, there is but one unemployment. Where a decision is correct but wrongly premised, this court will affirm the result on the proper basis. *Matter of Revello*, 100 Idaho 829, 832, 606 P.2d 933, 936 (1979).

The order of the Commission is affirmed. Appellate costs to respondent, but his request for payment in lieu of attorney fees is denied.

BISTLINE, DONALDSON and SHEPARD, JJ., concur.

BAKES, Chief Justice, dissenting:

As indicated in footnote 2 of the majority's opinion, the Industrial Commission made a clear finding of fact that "[t]he claimant *voluntarily left* his employment with Brasch & Miller." (Emphasis added.) However, the majority, *sua sponte* and without any discussion of the evidentiary record, concludes that "Gray *was always employed* until that point in December when he appeared ready to resume active employment status." (Emphasis added, *ante* at 398.) There is no justification for the majority's rejection of the commission's finding of fact that the claimant voluntarily left his employment. Neither party to the appeal contested that factual determination, and the evidence is more than sufficient to support that finding.

On appeal from decisions of the Industrial Commission, the function of this Court is constitutionally "limited to a review of questions of law." Idaho Const. art. 5, § 9. It is only where the commission's findings of fact are not based on any substantial competent evidence, thereby rendering the finding erroneous as a matter of law, that

this Court may set aside a finding of fact made by the commission. I.C. § 72–732; *Madron v. Green Giant Co.*, 94 Idaho 747, 497 P.2d 1048 (1972). The court's action today is contrary to the rule laid down in Idaho Const. art. 5, § 9, I.C. § 72–732, and our prior cases.

As this Court stated in *Holloway-Cook v. Albertson's*, 100 Idaho 384, 385, 597 P.2d 1074, 1075 (1979), there are certain evidentiary factors—"indicia of employment," they were called—which need be evaluated in order for the factfinder to determine whether a person continues in an employed status, *e. g.*, whether he was on the payroll, receiving fringe benefits, and still performing service to employer. In *Holloway* the question was whether unemployment benefits were available to claimants who had received notice of termination and who were no longer performing any services for the employer, but who were still receiving regular salary and fringe benefits from the employer as gratuitous transition assistance. Even though the claimants were not performing services for the employer, they were denied benefits because they were found to be still employed. "This conclusion [was] founded primarily upon the claimants' continuation upon the employer's payroll during this period with retention of all fringe benefits." *Id.* at 385, n. 1, 597 P.2d at 1075, n. 1. The determination in that case that employment continued was a factual determination made by the commission and based upon the presence of certain "indicia of employment." The Court in *Holloway* held that the "[f]indings of fact by this Industrial Commission are binding upon the court when sustained by competent evidence." *Id.* at 386, 597 P.2d at 1076.

In the present case there was ample evidence to sustain the commission's finding that there was no such "indicia of employment," and that the employee had voluntarily terminated his employment when he

ment voluntarily without good cause. Since he was unemployed as of that time, and ineligible under the facts, Andersen's later application for benefits (and his alleged unemployment as of the date of application due to an inability to find summer employment) was immaterial.

Here, of course, there never was a termination of the employment relationship until the later point in time when application for benefits was made, and Gray's unemployment at that time was caused by the weather shutdown.

went back to school: (1) the claimant performed no services for the employer; (2) he received no compensation while at school; (3) the previous work was manual labor—cement finishing—paid at an hourly rate; (4) he was not even close to the work site, being 250 miles away; (5) he had no contractual obligation to return to the employer, and the employer had no contractual obligation to rehire the claimant. The majority cites *Holloway* as support for the proposition that a person may be idle as to the employer, and yet still be employed. However, it needs no further discussion to make clear that *Holloway*, where the claimants were still on the payroll and were still receiving fringe benefits, was factually a very different situation than the one presented by this case. The evidence in the present case is quite lacking as to the existence of any "indicia of employment" after the claimant left for school. In any event, that is a factual question for the Industrial Commission, and it is clear that the commission's finding that the claimant's employment status terminated when he voluntarily left to attend school is supported by the evidence.

The majority opinion relies upon what it calls "the uncontradicted and unimpeached testimony of both employer and employee ..." to find "that Gray's attendance at Idaho State was in the nature of a 'leave of absence' from work." The majority then concludes that "this uncontroverted testimony, taken in conjunction with [the Department of Employment's regulation stating that a claimant on leave of absence is not entitled to benefits] is indicative that the Commission's finding of termination as of August, 1978, is without foundation." If the only evidence in the record was the testimony of the employer and the employee that Gray was away on a "leave of absence," then perhaps an argument could

be made that there was no evidence to support the commission's finding that the claimant voluntarily terminated his employment in August of 1978.[1] However, apparently the majority has forgotten the other evidence—"indicia of employment" as we called it just last year in *Holloway-Cook v. Albertson's, supra*—such as the fact that the claimant who had been performing manual labor at an hourly rate was no longer performing any services, receiving any compensation, had no contractual right, or obligation, for re-employment, and had left the area. The majority opinion inexplicably makes no mention of this "other evidence" in reversing the finding of the Industrial Commission that the claimant voluntarily left his employment in August of 1981. It is difficult to understand how that kind of evidence was sufficient to support the findings in the *Holloway* case but not sufficient to support the commission's finding in this case, particularly in light of the fact that neither party to this appeal has questioned the commission's finding that the claimant "voluntarily left his employment."

The majority attempts to distinguish our very recent case of *Andersen v. Brigham Young Univ.*, 101 Idaho 737, 620 P.2d 310 (1980), by stating that "Andersen did terminate his employment." It is indeed ironic that the distinction which the Court draws rests upon a distinction of *fact* and not law. Had the majority not displaced the commission's competent finding of fact by creating its own version of the facts, an attempt to distinguish the two cases would not have been necessary.

Having concluded that the evidence sustains the commission's finding that the claimant voluntarily left his employment, the question still remains as to whether he should receive unemployment compensa-

---

1. It seems, however, that such an argument would be weak at best. The claimant's testimony that his attendance at school was merely a leave of absence, rather than a termination of employment, was undeniably in his own interest. The employer also had no reason to dispute the claim that Gray had left on a leave of absence. Recovery of benefits by the plaintiff

would likely not have affected the contribution rate of the employer, since it was engaged in seasonal business. *See* I.C. §§ 72-1350, -1351. Such testimony of a definitely conclusory nature, and lacking adversary input, is certainly a feeble basis for stating that the commission's finding was unsupported by the evidence.

tion. Barring other exceptions, a claimant is eligible for unemployment compensation if "[h]is unemployment is not due to the fact that he left his employment voluntarily without good cause." I.C. § 72–1366(e). Good cause does not include termination to attend school. *See Andersen v. Brigham Young Univ., supra.* However, the claimant contends, and the commission found, that he was unemployed "due to" the unavailability of work, and not "due to" his voluntary leaving of employment, and is therefore entitled to benefits. That was the issue which the parties briefed and argued before this Court on appeal. Such an argument, as noted by the employment department's appeal examiner "does not go to the point." The claimant lost his eligibility for benefits when he voluntarily left his employment. I.C. § 72–1366(e). At the time he attempted to revive his employment, his status remained unchanged. The requirements for reestablishing eligibility are found in I.C. § 72–1366(*1*). That section provides that:

> "A benefit claimant who has been found ineligible for benefits under the provisions of subsections (c), (e) or (f) of this section may reestablish his eligibility *by having obtained bona fide work and received wages therefor* in an amount of at least eight (8) times his weekly benefit amount." (Emphasis added.)

Since the claimant had not obtained work and received wages equal to eight times his weekly benefit amount, he continued to be ineligible for unemployment benefits. *Andersen v. Brigham Young Univ., supra.* To hold otherwise is to ignore the clear legislative mandate of I.C. § 72–1366(*1*).

I would reverse the decision and remand the matter to the Industrial Commission with directions to affirm the decision of the Department of Employment.