[No. 44668.   En Banc.   August 18, 1977.]

SHELL OIL COMPANY, *Appellant,* v. NORWARD J. BROOKS, *Respondent.*

*Elvidge, Veblen, Tewell, Bergmann & Taylor,* by *Richard J. Thorpe* and *John Veblen,* for appellant.

*Slade Gorton, Attorney General,* and *Michael E. Tardif, Assistant,* for respondent.

UTTER, J.—The commissioner of the Department of Employment Security found there was no "stoppage of work" within the meaning of the applicable statute, RCW 50.20.090, at the Anacortes refinery of Shell Oil Company, appellant herein, when 220 employees left their jobs to strike. Unemployment benefits were then granted by the commissioner to the striking employees, which ruling was affirmed on review by the Superior Court. On appeal we find no error and affirm the Superior Court.

.The questions presented on appeal fall into two categories. First, did the commissioner adopt proper legal standards to determine whether a stoppage of work existed where there was no decline during the strike in the oil refined at appellant's plant? Second, was the commissioner's determination that no substantial curtailment of appellant's overall operations occurred during the labor dispute clearly erroneous in view of the record as a whole?

In January 1973, appellant employed approximately 381 persons at its refinery in Anacortes, Washington. One hundred sixty–one of these employees were salaried administrative and technical personnel. The remaining 220 employees were production personnel represented by the

oil, chemical and atomic workers' union. These employees went out on strike from January 23, 1973, until June 1973. During the course of that strike appellant continued operations at the refinery. Production or "throughput", defined as the quantity of crude oil processed in a given time period, remained at normal levels. This was accomplished through reassignment of technical and administrative personnel to production functions, together with the importation of an unspecified number of Shell employees from other locations. Specific in–plant reassignments of personnel were found by the commissioner to have taken place. At appellant's request, no evidence was taken as to the number of workers imported.

All the projects of the technical staff group, with the exception of two which had been assigned top priority, were delayed until the end of the strike. The projects delayed were found to be important to the long–term operation of the facility, but not necessary to the day–to–day operations of the plant during the course of the strike.

I

The commissioner may be reversed by this court if his findings, conclusions and decision are "affected by . . . error of law" or are "clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order". RCW 34.04.130(6)(d) and (e). It is first urged the commissioner erred because he construed provisions of the Employment Security Act too broadly. The preamble to the act indicates the menace to be combatted is "involuntary unemployment", stating the reserves collected and set aside by the State are "to be used for the benefit of persons unemployed through no fault of their own" and that the act is to be liberally construed "for the purpose of reducing involuntary unemployment". RCW 50.01.010. Based upon the broad language of this preamble, appellant urges a strict construction must be given to any language of the act

which is inconsistent with this general intent to benefit only those who are involuntarily unemployed.

The act provides a comprehensive scheme of compensation to individuals designed to mitigate the adverse impact of unemployment. While easing the burden of involuntary unemployment is its primary purpose, it does contain provisions allowing compensation to employees leaving their positions voluntarily. We have recognized that although the preamble of the act speaks only of "involuntary unemployment", it is not controlling in the face of provisions of the act allowing benefits, under specific circumstances approved by the act, to individuals who leave their jobs voluntarily. *In re Bale,* 63 Wn.2d 83, 87, 385 P.2d 545 (1963). *See International Union of Operating Engineers Local 286 v. Sand Point Country Club,* 83 Wn.2d 498, 519 P.2d 985 (1974). We have held the statute at issue, RCW 50.20.090, applies regardless of the individual employee's personal involvement with or responsibility for the labor dispute in question. *Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969).

## II

The act specifies the particular circumstances in which one who leaves employment due to a labor dispute may qualify for compensation, despite the voluntary character of such a termination. "An individual shall be disqualified for benefits for any week with respect to which the commissioner finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed . . ." RCW 50.20.090. The parties concede each claimant was unemployed because of the labor dispute. The next issue presented then is whether there was a "stoppage of work" which raises the ancillary issues of how that term is to be defined and whether the record supports the findings of the commissioner. The term "stoppage of work" refers to the operation of the employer's plant or business rather than the activity of individual

employees. *Lawrence Baking Co. v. Unemployment Compensation Comm'n,* 308 Mich. 198, 13 N.W.2d 260, 154 A.L.R. 660 (1944), *cert. denied,* 323 U.S. 738, 89 L. Ed. 591, 65 S. Ct. 43 (1944). *See Construction of Phrase "Stoppage of Work" in Statutory Provision Denying Unemployment Compensation Benefits During Stoppage Resulting from Labor Dispute,* Annot., 61 A.L.R.3d 693 (1975); Shadur, *Unemployment Benefits and the "Labor Dispute" Disqualification,* 17 U. Chi. L. Rev. 294 (1950). Cases from other jurisdictions interpreting statutes similar to RCW 50.20.090 are in general agreement that the term "stoppage of work" is most often defined in terms of a substantial curtailment of the employer's overall operations at the particular situs in question. *Mountain States Tel. & Tel. Co. v. Sakrison,* 71 Ariz. 219, 225 P.2d 707 (1950); *Inter–Island Resorts, Ltd. v. Akahane,* 46 Hawaii 140, 377 P.2d 715 (1962); *General Elec. Co. v. Director of Employment Security,* 349 Mass. 358, 208 N.E.2d 234 (1965); *Travis v. Grabiec,* 52 Ill. 2d 175, 287 N.E.2d 468 (1972). *See* Annot., *supra,* 61 A.L.R.3d 693, § 5, at 705. Whether there is a substantial curtailment is resolved by application of a number of established criteria to the facts of the particular case. There are a few fixed boundaries for the meaning of the term "substantial" in this context. The attempts by other courts to devise a formula based upon a percentage of reduction in normal production or operations by which a line delineating substantial from nonsubstantial could be established have varied from 50 percent of normal production in early decisions to as low as a 20 percent decline in business activity in subsequent decisions. More recently, the difficulty of applying a fixed percentage concept to define "substantial" has resulted in courts assessing a number of factors.

Since the mid–fifties, there has been a new emphasis placed upon the term "operations." As production increasingly represents less than totality of the employing unit's performance, decreases in business revenue, services rendered, marketing, research, and maintenance,

transportation, and construction activities have come to the fore as indicia of substantialness.

(Footnote omitted.) Lewis, *The "Stoppage of Work" Concept in Labor Dispute Disqualification Jurisprudence,* 45 J. Urban Law 319, 332 (1967).

The specific criteria accented by the commissioner in this case were whether there was a diminution in production and whether there was a substantial curtailment of other normal nonproduction "operations." The parties concede and the court found there was no curtailment of production. The parties then focused on whether there was a substantial curtailment of other, nonproduction related, operations. Appellant placed its primary emphasis upon disruptions resulting from the necessity to reassign nonproduction personnel. Of the nonproduction staff, a total of 64 employees out of the total employment complement of 381 employees, were reassigned. Because these individuals were not replaced, there was at least a 16 percent reduction in the overall personnel within the employer's operations. Appellant argues a 16 percent reduction in overall personnel constitutes a substantial curtailment of normal employer operations. Jurisdictions outside the state of Washington considering the same question have varied in their conclusions, ranging from a low of perhaps 13 percent to a high of over 50 percent in personnel reduction as being indicative of "substantial curtailment" of employer operations. *Compare Mountain States Tel. & Tel. Co. v. Sakrison, supra, and General Elec. Co. v. Director of Employment Security, supra.* Appellant asserts first the commissioner's decision was fundamentally wrong as a matter of law in that he failed to consider the nature of the work that was not being performed in relation to the total operation of the refinery, and that he should have considered factors other than simply the reduction in overall personnel. We do not read the record as limiting the commissioner's determination solely to that factor. In this context, in his decision the commissioner discussed at length another case involving a strike at a refinery which is

in many respects factually similar to this situation. *Travis v. Grabiec, supra.* He emphasized the strike in *Travis* had caused a severe curtailment in overall operations, including the destroying of work in the treatment and research department and the suspension of construction and maintenance work, as well as truck and barge transportation. He recognized that these factors had led the court in that case to find significant evidence of a stoppage of work despite the fact that for a period of time full production of barrels of oil per day was carried on by a skeleton force working abnormal hours and performing abnormal functions. Later in his opinion the commissioner made it clear that he believed the impact on normal operations caused by the reduction in personnel was not as severe as that in the *Travis* case.

The trial court found that the commissioner did not commit an error of law inasmuch as he applied the criteria suggested by the Supreme Court of Illinois in *Travis,* and these were the proper criteria to apply. The trial court further held that in applying the facts of the case to the criteria, the commissioner's ruling was not clearly erroneous, although it noted that had it tried the case initially under those criteria it would have found a substantial stoppage of work.

We agree with the determination of the trial court. The question of whether there has been such a sufficient curtailment of operations as to justify the conclusion a stoppage of work exists is essentially a question of fact and reviewable under the "clearly erroneous" test. RCW 34.04.130(6)(e). We have held a similar administrative determination under RCW 50.20.090 to be reviewable only under this standard. *Employees of Pac. Maritime Ass'n v. Hutt,* 88 Wn.2d 426, 562 P.2d 1264 (1977). An examination of the administrative record herein supports the decision of the commissioner given that the evidence presented to him concerned primarily reassignment of workers within the plant. While appellant makes an argument that testimony established a 19 percent rather than a 16 percent reduction

of the total work force, this difference in percentage is immaterial in view of the other considerations involved.

Appellant has urged the case of *General Elec. Co. v. Director of Employment Security, supra,* is controlling. That case held the work of less than 13 percent of the work force not being performed on the premises required the court to treat this prevention of work as a "stoppage of work". We do not believe that case is controlling inasmuch as it represents a minority view requiring a substantially lesser showing of interference with overall operations than other cases dealing with this issue.

We further decline to establish as determinative a fixed percentage level of employee reductions or displacements. The determination of whether a "stoppage of work" has occurred in any particular instance will depend largely on the facts of each case. In such a situation it would be inadvisable to limit the commissioner's power to consider all relevant criteria and accent those which may be most appropriate in a particular setting.

We find no merit in appellant's other arguments and affirm the judgment of the commissioner and Superior Court.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.