Thomas M. **MEYER**, Robert W. Fox, and Jeffrey J. Schwartz, Appellants,

v.

The **IOWA DEPARTMENT OF JOB SERVICE** and Tri-State Mechanical Contractors, Appellees.

No. 85-403.

Supreme Court of Iowa.

April 16, 1986.

Kevin G. Magee and Peter J. Grady, Dubuque, for appellants.

Walter F. Maley, Blair H. Dewey, and Joseph L. Bervid, Des Moines, for appellee Iowa Dept. of Job Service.

James R. Swanger and Wendy Everett Ogden, Des Moines, for appellee Tri-State Mechanical Contractors.

WOLLE, Justice.

Petitioners are three union plumbers who applied for unemployment compensation benefits while engaging in an economic strike against their employer Tri-State Mechanical Contractors (Tri-State). A final agency decision of the Iowa Department of Job Service (department), upheld on judicial review by the district court, determined that petitioners were disqualified from unemployment compensation benefits by reason of Iowa Code section 96.5(4) (1983) which in pertinent part provided:

> An individual shall be disqualified for benefits:
>
> . . . .
>
> 4. *Labor disputes.* For any · week with respect to which the department finds that his or her total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he or she is or was last employed [subject to two exceptions not involved here].

Petitioners contend that no stoppage of work occurred at their place of employment notwithstanding their participation in a strike for more favorable terms of employment than Tri-State had offered. Substantial evidence supports the department's finding of a disqualifying work stoppage, and we therefore affirm.

Each of the petitioners was employed by Tri-State and working in accordance with the terms of a collective bargaining agreement which expired on April 30, 1983. Negotiations toward a new contract reached an impasse, and petitioners did not report for work on May 2, 1983, the next regular workday after the labor contract expired. Tri-State hired some replacement workers and continued operations to some extent, while petitioners picketed several work sites.

Petitioners applied for unemployment compensation benefits in June of 1983, but a claims deputy found them disqualified from receiving benefits by reason of the labor dispute provision, Iowa Code section 96.5(4) (1983). A contested case hearing was then held before an agency hearing officer in October of 1983, and evidence was presented concerning the eligibility of petitioners for unemployment benefits during the five months since the strike had begun.

At the time of the hearing, the three petitioners and four other union members had not returned to work for Tri-State because of the labor dispute, and they had participated during the strike in picketing one or more places where Tri-State was performing work. Tri-State's president and general manager testified that the labor dispute was still in progress and that petitioners had not been permanently replaced. Although Tri-State began to advertise for replacement workers just prior to the expiration of its former labor agreement with the union, and had hired some replacements, he testified that petitioners could have come to work during the period of the strike had they chosen to do so. Questioned by the hearing examiner concerning the effect of the strike on work at Tri-State, the president and general manager further testified as follows:

Q. Is work being performed at Tri-State Mechanical Contractors now? A. Yes.

Q. To what extent? A. Clarify what you mean by what extent.

Q. What would be the percentage of your production? If you were 100 percent operating on May—or April 30, 1983 —A. Oh, we're probably 25 percent to capacity.

Q. All right. And has it been greater or lesser than that during this period? A. It has varied, depends upon the workload.

Q. Was there an occasion after the picket line was established wherein no work was performed at all, any particular week? A. No.

The agency hearing officer found section 96.5(4) inapplicable to petitioners because the evidence did not establish that there had been a "stoppage of work." The department's appeal board, however, issued a final agency decision reversing the hearing officer's determination and holding that petitioners were disqualified from benefits. It found:

Clearly, from the record, there was a labor dispute occurring on or after May 1, 1983 and the claimant[s were] involved in that labor dispute. It is clear from the record that there was a substantial reduction or stoppage of work which was caused by that labor dispute.

The district court on judicial review upheld that final agency decision, concluding that the quoted findings were supported by substantial evidence in the record as a whole.

In this judicial review proceeding governed by Iowa Code section 17A.19, our primary function, like that of the district court, is to determine whether the agency action was either affected by an error of law or "unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole." Iowa Code § 17A.19(8)(e), (f) (1983); *see Taylor v. Iowa Department of Job Service*, 362 N.W.2d 534, 537 (Iowa 1985). We are limited to the record made before the agency and will affirm findings of fact in the final agency decision which are supported by substantial evidence. *Higgins v. Iowa Department of Job Service*, 350 N.W.2d 187, 190 (Iowa 1984); *Messina v. Iowa De-*

*partment of Job Service*, 341 N.W.2d 52, 59 (Iowa 1983).

At the outset we are faced with the parties' differing interpretations of controlling statutory language. Petitioners contend that the phrase "stoppage of work" in section 96.5(4) refers to a total curtailment in the employer's business operations brought about by a labor dispute, not just a partial curtailment. Petitioners contend that there was no stoppage of work because Tri-State replaced the strikers with other employees and resumed its business operations. Tri-State and the department respond that a partial reduction in work, if substantial, is disqualifying, and the evidence supports the final agency decision holding that a substantial stoppage of work had occurred. Our resolution of those issues is dispositive of this appeal. We therefore do not address the further contention of Tri-State and the department that any discontinuance of work by striking employees may constitute a disqualifying stoppage of work without consideration of the strike's effect on the employer. *See generally* Annot., 61 A.L.R.3d 693, 705 (1975).

■ Petitioners have cited no authorities supporting their contention that a partial stoppage of work is not disqualifying. Other jurisdictions with statutes similar to ours have held that the phrase "stoppage of work" refers to a substantial and not necessarily a total cessation of work. *See, e.g., Mountain States Telephone & Telegraph Co. v. Sakrison*, 71 Ariz. 219, 225, 225 P.2d 707, 711 (1950) ("by the term 'stoppage of work' is meant a substantial curtailment of operations"); *Magner v. Kinney*, 141 Neb. 122, 130–31, 2 N.W.2d 689, 693 (1942) (thirty percent reduction in business was substantial and disqualifying; court relied on decisions in New Jersey and Oregon denying unemployment benefits where production decreases were less than thirty percent). *See generally* Annot., 61 A.L.R.3d at 705–16 (cataloguing cases and noting that the extent of work curtailment which will constitute a disqualifying "work stoppage" is peculiarly a fact-bound deter-mination). The department correctly construed section 96.5(4) to disqualify unemployment compensation claimants like these petitioners whose labor dispute caused a substantial, though not total, stoppage of the employer's work.

■ We find in this record adequate support for the agency's determination that there was a substantial curtailment of Tri-State's work. Evidence supporting a final agency decision is substantial when a reasonable mind reviewing the entire record could accept it as adequate to reach the same findings. *Roberts v. Iowa Department of Job Service*, 356 N.W.2d 218, 221 (Iowa 1984). The only evidence concerning the extent of the stoppage of work was that given by Tri-State's president and general manager; the petitioners presented no evidence to support their contention that Tri-State was working at full capacity. Although the employer's post-strike production varied somewhat, depending on the work load, it was "twenty-five percent to capacity," according to Tri-State's principal managing officer. Petitioners contend that answer proved that Tri-State was working up to capacity, but we believe a more reasonable interpretation of the officer's testimony, considered in context, is that work was proceeding at about one-fourth Tri-State's pre-strike capacity. The officer was first asked to estimate Tri-State's percentage of production using operations on April 30 for comparison. His answer— "twenty-five percent to capacity"—could reasonably be interpreted to mean that production had fallen to twenty-five percent of pre-strike capacity. That interpretation of the officer's testimony is buttressed by his later undisputed testimony that the petitioners could have come to work had they chosen to do so rather than continuing their strike.

The agency reasonably concluded from the evidence presented at the contested case hearing that a substantial stoppage of work resulted from the ongoing labor dispute, disqualifying petitioners from receiving unemployment benefits.

The district court on judicial review correctly upheld that final agency decision.

AFFIRMED.

All Justices concur except CARTER, UHLENHOPP, HARRIS and SCHULTZ, JJ., who dissent.

CARTER, Justice (dissenting).

I respectfully dissent from the opinion of the court. Although the spectre of providing strike benefits for employees from the employment insurance contributions of their employer may be an appealing philosophical rationale for denying unemployment benefits, the record in the present case does not permit such denial under the statute relied on by the appellees. If benefits are to be denied, it must be for some other reason not argued by either the employer or the agency. The opinion of the court fails to respond to the substantial legal issues argued by the parties. Because it is apparent from its argument on this appeal that the agency charged with administering our employment security laws is misinterpreting the statutory disqualification involved in this case and is acting contrary to its own rules, we should deal at length with these legal issues.

The appellants-employees have correctly maintained throughout this litigation that a condition precedent to a section 96.5(4) disqualification is a showing that the particular labor dispute has caused a substantial curtailment in the employer's business operations. This is the criterion approved in the applicable rules of the Iowa Department of Job Service. In 370 Iowa Admin. Code § 4.33(1), it is provided that "[a]n individual shall be disqualified for benefits if unemployment is due to a labor dispute." Another rule provides, however, that "[t]o constitute a labor dispute there must be a stoppage of work *at the plant or establishment*." 370 Iowa Admin. Code § 4.34(9) (emphasis added).

Although appellees contend that the italicized language in the foregoing rule may be interpreted as referring to an employee not reporting for work at the plant or establishment rather than to a curtailment of operation at the plant or establishment, the context does not sustain this interpretation. An employee claiming unemployment benefits for a particular week would necessarily not have been working during that week. A rule making this a condition for receipt of benefits would thus serve no purpose whatsoever.

This provision of our unemployment insurance laws was enacted in 1937. At this time, the Iowa Legislature, as did the legislatures of approximately three-fourths of the states, adopted the draft bills prepared by a federal committee on economic security for implementation of federal social security legislation. *See* Lewis, *The "Stoppage of Work" Concept in Labor Dispute Disqualification Jurisprudence,* 45 J.Urb.L. 319, 322 (1967).

Decisions of courts from other states which have adopted this particular provision of the federal draft bills are in almost unanimous agreement that some curtailment of the employer's operation is necessary in order to impose this particular statutory disqualification upon the striking employees. *Mountain States Telephone & Telegraph Co. v. Sakrison,* 71 Ariz. 219, 225 P.2d 707 (1950); *Inter-Island Resorts, Ltd. v. Akahane,* 46 Hawaii 140, 377 P.2d 715 (1962); *Totorica v. Western Equipment Co.,* 88 Idaho 534, 401 P.2d 817 (1965); *Travis v. Grabiec,* 52 Ill.2d 175, 287 N.E.2d 468 (1972); *Pickman v. Weltmer,* 191 Kan. 543, 382 P.2d 298 (1963); *Adomaitis v. Director of Division of Employment Security,* 334 Mass. 520, 136 N.E.2d 259 (1956); *Lawrence Baking Co. v. Unemployment Compensation Commission,* 308 Mich. 198, 13 N.W.2d 260 (1944); *Deshler Broom Factory v. Kinney,* 140 Neb. 889, 2 N.W.2d 332 (1942); *Fontaine v. Board of Review,* 100 R.I. 37, 210 A.2d 867 (1965); *Shell Oil Co. v. Brooks,* 88 Wash.2d 909, 567 P.2d 1132 (1977). These and other cases with similar holdings are annotated at 61 A.L.R.3d 693 (1975). Consistent with this view, these courts tend to define "stoppage of work" in terms of a substantial curtailment of the employer's

overall operations at the particular site in question. *Mountain States Telephone & Telegraph Co.*, 71 Ariz. at 225, 225 P.2d at 711; *Inter-Island Resorts, Ltd.*, 46 Hawaii at 147–48, 377 P.2d at 720; *Travis*, 52 Ill.2d at 180–82, 287 N.E.2d at 470–71; *Shell Oil Co.*, 88 Wash.2d at 912, 567 P.2d at 1134.

Although cases may be found where disqualification has been predicated on the mere cessation of work by the striking employee rather than curtailment in the employer's operation, they have largely been decided under statutes which do not contain the "stoppage of work" language and only require that the unemployment be due to the existence of the labor dispute in order to cause disqualification. A good discussion of the distinction between the two types of statutes is contained in *Lawrence Baking Co.*, 308 Mich. at 202–03, 13 N.W.2d at 262–63. A detailed discussion of the other type of statute is found in Shadur, *Unemployment Benefits and the "Labor Dispute" Disqualification* 17 U.Chi.L.Rev. 294, 309, 319 (1950). An example of the type of statute not requiring "stoppage of work" is the Ohio statute involved in *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977).

Commentators who have considered the meaning of "stoppage of work" under the draft bills agree with appellants' contention that this phrase refers to a reduction of the employer's operations, rather than to cessation of work by a striking employee. These writers believe this interpretation is mandated by the language of the statute which makes benefit ineligibility dependent upon two separate cause and effect determinations, *i.e.*, (1) whether a stoppage of work exists "because of a labor dispute," and (2) whether the claimant's unemployment (for any week in which benefits are claimed) is "due to a stoppage of work." *See* Shadur, *supra*, 17 U.Chi.L.Rev. at 313;

Lewis, *supra*, 45 J.Urb.L. at 333–34; Williams, *The Labor Dispute Disqualification—A Primer and Some Problems* 8 Vand.L.Rev. 338, 339, 344–47 (1955). These commentators buttress this conclusion with reference to the fact that the draft bills of the committee on economic security had their origin in the British Unemployment Insurance Acts which had acquired a settled construction consistent with this meaning.[1]

Appellees argue that, notwithstanding the weight of authority from other jurisdictions, this court has decided at least three cases involving section 96.5(4) in a manner which is entirely inconsistent with the interpretation espoused by the appellant. The cases for which such claim is made are *Galvin v. Iowa Beef Processors, Inc.*, 261 N.W.2d 701, 702–03 (Iowa 1978); *Johnson v. Iowa Employment Security Commission*, 239 Iowa 816, 825–27, 32 N.W.2d 786, 790–92 (1948); and *Dallas Fuel Co. v. Horne*, 230 Iowa 1148, 1153–55, 300 N.W. 303, 305–07 (1941).

In the latter case, the major issues were (1) whether the labor dispute disqualification in section 96.5(4) applies to union workers whose contract has expired and failed to return to work before a new agreement is negotiated, and (2) whether the members of the local union in that case were participating in the labor dispute being carried on by its national organization. No issue was raised in the case concerning the extent to which the employer's production had been curtailed by the strike. In the *Johnson* case, the issue centered around the striking employees' claim that, because of seasonal variations in the coal industry, they would have been unemployed during the period for which benefits were being claimed without regard to whether a strike had ensued. This was resolved as an issue of fact on the record presented in the particular case. No consideration was given to the extent to

---

1. The British Umpires had interpreted the reference to "stoppage of work" as referring "not to the cessation of the workmen's labour but to a stoppage of the work carried on in the factory, workshop or other premises at which the workman is employed." Brit.Ump. 1480/1927, BU–
495 (1927); Ministry of Labour Analytical Guide U.I. Code 7, Part III, § 43 (1939 ed.). Reliance was placed on the British interpretation in *Magner v. Kinney*, 141 Neb. 122, 128, 2 N.W.2d 689, 692 (1942).

which the employer's operation had been curtailed during the strike. *Galvin* is similar to *Johnson* in that the issue involved the cause of the claimants' unemployment. They had been laid off prior to the strike and announced the strike when called back to work by their employer. The issue was treated as one of fact with respect to whether the cause of their unemployment was the prior layoff or the later strike. No consideration whatsoever was given to whether the employer's production had been curtailed.

In none of these cases are the results inconsistent with that which appellant is proposing in the present case. The issue in the present case was not raised in any of those cases. Moreover, it cannot be stated with certainty from the record in any of those appeals that the necessary curtailment of the employer's operation did not exist. Because this was not contested, it must be assumed that it did. The cited cases therefore provide no support for appellees' proposed interpretation of section 96.5(4).

In the present case, the employer is a plumbing contractor which, as far as the present record would indicate, has not failed to complete a single job nor been hampered in bidding any new jobs as a result of the strike. The striking workers were immediately replaced by the realignment of existing personnel and the hiring of some new workers. The decision of the agency appeals board, which the majority upholds, reversed its hearing examiner's award of benefits and imposed a disqualification based upon a misreading of the record. The decision of the appeals board incorrectly states that the evidence reveals a reduction in operations at Tri-State during the strike to "twenty-five percent *of* capacity." In fact, the testimony upon which the appeal board relied was that Tri-State's operations, at some undisclosed point in time during the strike, was "twenty-five percent *to* capacity." This was the testimony of Tri-State's president and general manager. He went on to indicate in his testimony, however, that the rate of operations varied proportionately with the work available. The fact that Tri-State's operation was "twenty-five percent to capacity" during the strike provides no evidence of the extent of the curtailment, if any, caused by the labor dispute. In order to answer this question, it is necessary to know at what percent of capacity Tri-State would have operated if the strike had not occurred. Perhaps more critical to the application of section 96.5(4) is that the statute also expressly requires, as a condition for disallowing benefits, that the necessary curtailment in the employer's operation existed during the particular week for which benefits are claimed. There is absolutely no evidence in the record which would permit the necessary finding in this regard.

Because the record made before the agency when viewed as a whole does not contain substantial evidence of the necessary elements for a section 96.5(4) disqualification, the agency erred in denying appellants' claims on this ground. I would reverse the judgment of the district court and the agency.

UHLENHOPP, HARRIS and SCHULTZ, JJ., join this dissent.