CRESCENT CHEVROLET, Betts Cadillac, Des Moines AMC Jeep, Inc., Dewey Ford, Bob Brown Chevrolet, Inc., Ramsey Pontiac, Conway Buick–Opel, Inc., and Holmes Oldsmobile, Appellees,

v.

IOWA DEPARTMENT OF JOB SERVICE, Appellee,

and

Robert C. Mickles, et al., David G. Boucher, et al., Ronald L. Koons, et al., P.D. Allgood, et al., Steven P. Wirth, et al., Duane H. Frey, et al., D.V. Algreen, et al., and Michael W. Hutton, et al., Intervenors–Appellants.

No. 87–836.

Supreme Court of Iowa.

Sept. 21, 1988.

Arthur C. Hedberg, Jr., and Mark T. Hedberg, Des Moines, for intervenors-appellants.

James R. Swanger and Jill Thompson Hansen of Brown, Winick, Graves, Donnelly, Baskerville & Schoenenbaum, Thomas M. Zurek of Mumford, Schrage & Zurek, and Michael Sellers, Des Moines, for appellees.

Blair H. Dewey and William C. Whitten, Des Moines, for appellee Iowa Dept. of Job Service.

SNELL, Justice.

This case contains the consolidated claims for unemployment compensation of 118 employees of several auto dealers doing business in the Des Moines area. These claimants established picket lines on January 9, 1983, after their union contracts expired and negotiations reached an impasse. The economic strike ended July 27, 1984.

The claimants, intervenors and appellants herein, were employed by their employers in various capacities, but primarily as mechanics and bodyshop workers. They work within a department established at the employer's place of business having separate management and separate accountability. These departments include new and used car departments, an accounting department, a service and a parts department. Separate accounting maintenance is performed to reflect the profitability or lack of it by the respective departments.

The petitioners-appellees are the employers involved in these claims. The Iowa Department of Job Service is the respondent. Our review is subject to the guidelines of our administrative procedure act. *See* Iowa Code § 17A.19 (1981).

I. *The Facts.*

The crux of this contested case is whether claimants were within the statutory provision which disqualifies individuals

[f]or any week with respect to which the division of job service finds that the individual's total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which the individual is or was last employed,....

Iowa Code § 96.5(4) (1981). Following the decision of a claims deputy which concluded they were disqualified from benefits by virtue of this subsection, claimants appealed to a department of job service hearing officer. A hearing was held on January 4, 1984. After a day of taking evidence, the hearing was set to be continued on January 23, 1984, due to time constraints. On January 5, however, the parties entered into the following stipulation:

The undersigned have agreed and do hereby stipulate, if approved by you as hearing officer, that the above-referred to matter should be submitted to you on the record as it presently stands. It is further stipulated that the continuance previously discussed is hereby rendered unnecessary and further that all the parties are waiving the right to furnish any further testimony or evidence and further waive closing arguments.

If you have any questions about this proposed procedure, please contact any one of the undersigned.

The hearing officer found from the record, as submitted, that a labor dispute had occurred on September 9, 1983, that resulted in picket lines being established at eight employers' premises. The officer also found that the machinists' union members (claimants herein) who were on strike were replaced by supervisory personnel and non-union workers, and the premises where claimants were employed, continued to remain open and to operate. Based on these findings, the officer concluded that a "stoppage of work" did not exist. Consequently, claimants were entitled to benefits. Petitioners appealed to the appeal board.

The appeal board, notwithstanding the above-noted stipulation, remanded the case for the taking of further evidence on the stoppage of work issue. Following the remand, the appeal board determined the stoppage of work issue as to each individual petitioner. The board reversed the hearing officer's decision, found a stoppage of work as to each petitioner-employer, and

remanded for further findings pertaining to the ending of the relevant labor dispute. Petitioners sought judicial review limited to the issue whether the appeal board employed the correct understanding of "stoppage of work." Following the claimants' petition in intervention, the district court affirmed the decision of the appeal board in part, reversed in part and remanded for the further taking of evidence.

## II. *The Appeal Board's Remand Order.*

■ The claimants contend the appeal board erred in its initial remand of the claims for additional evidence on the stoppage of work issue. Without the additional evidence adduced on remand, claimants assert the record fails to show that a "stoppage of work" occurred. This contention relies upon the parties' stipulation and Iowa Code section 17A.10(2), which provides that "[t]he parties to a contested case proceeding may, by written stipulation representing an informed mutual consent, waive any provision of this chapter relating to such proceedings." In addition, claimants cite statutory authority relating to informal settlement and disposition of controversies. *See* Iowa Code §§ 17A.10(1), 17A.12(5) (1981). Clearly these latter authorities have little bearing on claimant's argument concerning the remand order, however, as neither an informal settlement nor an informal disposition was being attempted by the parties.

Moreover, we do not agree with the claimants' apparent belief that the statutory right which enables parties in contested cases to waive certain proceedings may be used to limit the statutory authority given the appeal board. On the appeal from the hearing officer, the board possessed all the power that inhered in the body making the initial determination. *See* Iowa Code § 17A.15(3) (1981). The person making the initial determination is under a statutory duty to "take the initiative to ascertain relevant information concerning the claim." Iowa Code § 96.6(2) (1981). In addition, the appeal board, in order to comply with its statutory duty "to hear and decide contested cases under chapter[ ] ...

96 ...," Iowa Code § 10A.601(1) (1981), is given the authority to "on its own motion ... direct the taking of additional evidence...." Iowa Code § 10A.601(4) (1981). We do not think that this authority, vested in the appeal board, is a provision which may be "waived" by the parties. *See Mary R. v. B & R Corp.*, 149 Cal.App. 3d 308, 317, 196 Cal.Rptr. 871, 876 (1983) (stipulation which, in effect, prohibits agency from performing its statutory obligations and functions will not be enforced). The appeal board operated within its authority in remanding for additional evidence.

## III. *The Stoppage of Work Issue.*

A. *The law.* Petitioners-employers maintain the appeal board applied an incorrect understanding of the applicable definition of "stoppage of work." This, petitioners contend, is because the proper inquiry focuses not on the curtailment of the employers' operations, as the appeal board and district court believed, but rather on the employees' absence from work. *In Meyer v. Iowa Department of Job Service*, 385 N.W.2d 524, 526 (Iowa 1986), we held that the Department of Job Service correctly construed section 96.5(4) to disqualify unemployment compensation claimants whose labor dispute caused a substantial, though not a total, stoppage of the employer's work. Left unanswered in *Meyer*, is petitioner's claim herein, that any discontinuance of work by striking employees constitutes a disqualifying stoppage of work without consideration of the strike's effect on the employer.

■ The great majority of the courts which have resolved this issue have held that the disqualifying phrase "stoppage of work" refers to the employer's operations and not, as petitioners would have us hold, to the efforts of the individual employees. *See, e.g., Twenty-eight (28) Members of Oil, Chemical and Atomic Workers Union, Local 1-1978 v. Employment Sec. Div.*, 659 P.2d 583, 591 (Alaska 1983); *International Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co.*, 713 P.2d 943,

952 (Hawaii 1986); *Aaron v. Review Bd.,* 440 N.E.2d 1, 3 (Ind.App.1982); *City of Billings v. State of Montana Bd. of Labor Appeals,* 204 Mont. 38, 49, 663 P.2d 1167, 1174 (1983); *Anderson v. Board of Review,* 737 P.2d 211, 214 (Utah 1987); *Whitcomb v. Department of Employment and Training,* 147 Vt. 525, 526, 520 A.2d 602, 603 (1986); Annotation, *Construction of Phrase "Stoppage of Work" in Statutory Provision Denying Unemployment Compensation Benefits During Stoppage Resulting from Labor Dispute,* 61 A.L.R.3d 693, 697 (1975). On the other hand support for petitioners' proffered interpretation is slight. *See Board of Review v. Mid–Continent Petroleum Corp.,* 193 Okl. 36, 38, 141 P.2d 69, 71 (1943); *Unemployment Compensation Bd. of Review v. Tickle,* 19 Pa. Cmwlth. 550, 560, 339 A.2d 864, 869 (1975). Contrary to petitioners' contentions, our cases have not adopted this latter position. Neither *Galvin v. Iowa Beef Processors, Inc.,* 261 N.W.2d 701 (Iowa 1978), *Deer Manufacturing Co. v. Iowa Employment Security Commission,* 249 Iowa 1066, 90 N.W.2d 750 (1958), nor *Johnson v. Iowa Employment Security Commission,* 239 Iowa 816, 32 N.W.2d 786 (1948), discuss or decide the point. *See Meyer,* 385 N.W.2d at 528–29 (Carter, J., dissenting).

Focusing on the level of the employer's operations has been labeled the "American Rule" by the United States Supreme Court. *See New York Tel. Co. v. New York State Labor Dep't,* 440 U.S. 519, 534, 99 S.Ct. 1328, 1338 n. 24, 59 L.Ed.2d 553, 565 n. 24 (1979). Many of the decisions adopting this rule have been persuaded by the fact that "stoppage of work," if interpreted to refer to the employees' status, would create a redundancy within the disqualifying phrase "unemployment due to a stoppage of work...." *See, e.g., Twenty-eight (28) Members of Oil, Chemical and Atomic Workers Union,* 659 P.2d at 587–88; *Continental Oil Co. v. Board of Labor Appeals,* 178 Mont. 143, 148–49, 582 P.2d 1236, 1240 (1978); *Albuquerque–Phoenix Express, Inc. v. Employment Sec. Comm'n,* 88 N.M. 596, 601, 544 P.2d 1161, 1166 (1975). In addition, commentators who have discussed the issue have noted the consistency of the "American Rule" with the historical origins of the disqualification. *See* Shadur, *Unemployment Benefits and the "Labor Dispute" Disqualification,* 17 U.Chi.L. Rev. 294, 308. Finally, the "American Rule" is consistent with the department of job service rule providing that in order "[t]o constitute a labor dispute there must be a stoppage of work at the plant or establishment." 345 Iowa Admin.Code 4.34(9) (1987). We give deference to an administrative agency's interpretation of a statute it administers unless that interpretation is unreasonable or clearly erroneous. *E.g., Iowa Ass'n of School Bds. v. Iowa Pub. Emp. Relations Bd.,* 400 N.W.2d 571, 575 (Iowa 1987). We are persuaded by these rationales and adopt the "American Rule" as our own.

B. *The factual support.* The district court, applying the American Rule in reviewing the appeal board's finding that a stoppage of work did occur at petitioners' establishments concluded that the finding was amply supported by the record. The appeal board found the service/body department of each auto dealer is considered a separate "factory, establishment or other premises" for purposes of section 96.5(4). The parties do not dispute this finding.

What constitutes a substantial curtailment of an employer's business depends on the facts and circumstances of each case. A number of factors may impact on the assessment of a substantial curtailment including decreased production, business revenues, service, number of employees, payroll or man hours. *See* M. Shadur, *Employment Benefits and the "Labor Dispute" Disqualification,* 17 U.Chi.L.Rev. 294, 311 (1950); Ann. 61 A.L.R.3d 693, 705–06 (1975). One measure is the effect on the production during the labor dispute. *See* J. Williams, *The Labor Dispute Qualification a Primer and Some Problems,* 8 Vanderbilt L.Rev. 338, 340 (1955). Testimony in this record shows that repair count figures are a substantial measure of productivity in the auto repair business. The record here contains evidence of a decline in the repair orders written at seven of the eight dealerships.

Various exhibits present a comparison of the number of repair orders processed in September 1983 (the first month of the strike) with the number in September 1982. In September 1983 Crescent Chevrolet had only 48% of the repair orders for September 1982. Holmes Oldsmobile handled only 36% of the prior year's orders; Conway–Buick–Opel, 12.73%; Ramsey Pontiac, 69%; Bob Brown Chevrolet, 63.7%; and Betts Cadillac, 42%. Des Moines AMC Jeep, Inc. wrote almost the same number of repair orders but the president testified that this was because they were using untrained personnel from other departments and the orders had to be redone several times before they were done properly. The president testified that the actual amount of work was only 30% of the level before the labor dispute. Gross sales at Dewey Ford from the affected departments dropped from $211,740 in August 1983 to $136,020 in September, declining by 64.24%. Sales revenue comparisons are also a logical measure of operational volume and change. No party argues that, considering this evidence adduced on the administrative remand, the appeal board's finding of a stoppage of work is without evidentiary support. We agree with the district court.

Implicit in the agency's conclusion that the production of separate departments must be examined to determine if a stoppage of work has occurred is a rejection of claimants' suggestion that no stoppage occurs if the employer keeps operating by replacing employees with employees of another department. The cannibalizing of workers in one department to help a department directly affected by a labor dispute cannot provide the basis for finding a stoppage of work has not occurred under the statute. Although the effect of the labor dispute on each department must be considered separately, the analysis does not proceed in a vacuum and necessarily relates to the employer's entire business operation.

C. *Work stoppage termination.* The district court disagreed with the appeal board's apparent rationale that the stoppage of work was, by legal necessity, coterminous with the underlying labor dispute.

Accordingly, the district court remanded the case to the agency for findings concerning when the stoppage of work ended at each petitioner's establishment. Petitioners contend the district court erred by concluding that a stoppage of work may end before the underlying labor dispute and, consistent with this conclusion, by remanding for further findings.

That a labor dispute may exist without a stoppage of work is clear both from our analysis above and from the statute itself. That statute uses both "stoppage of work" and "labor dispute" in the same sentence and in a context which demonstrates they are neither identical nor coterminous: an employee is disqualified when his or her unemployment is "due to a stoppage of work which exists because of a labor dispute...." Iowa Code § 95.5(4) (1981). We have noted that this statutory subsection poses two separate questions of causation: that linking the unemployed status and the stoppage of work and that connecting the stoppage of work and the labor dispute. *Alexander v. Employment Appeal Bd.,* 420 N.W.2d 812, 814 (Iowa 1988). In order for this latter inquiry to be anything but nonsensical, it must be accepted that the stoppage of work and the labor dispute are independent conditions.

Given this, it is clearly possible, as the district court apparently believed, for a labor dispute to exist prior to, subsequent to, or entirely without a stoppage of work.

> It is generally agreed by the courts that a "stoppage of work" and its resultant disqualification for unemployment benefits may continue until the employer has had a reasonable time to resume normal operations ... [s]ome courts have acknowledged that a stoppage of work may end before the settlement of the underlying labor dispute, if the employer has been able to hire a sufficient number of permanent employees to replace strikers and to resume normal operations.

Annot. 61 A.L.R.3d 693, 698 (1975). As the Arkansas Supreme Court has observed, "it is illogical to say that the stoppage does not occur in the first place until production has fallen off by at least twenty or thirty percent and yet to hold that the stoppage continues until the plant again reaches

100% of its productive capacity." *Monstanto Chem. Co. v. Thornbrough*, 229 Ark. 362, 314 S.W.2d 493, 496 (1958). Moreover, for a claimant to be disqualified under the labor dispute qualification, a labor dispute and a stoppage of work must be present in the same week. Iowa Code § 96.5(4) (1985). We believe a stoppage of work ceases when the employer's operations are returned to a substantially normal basis. *See, e.g., Aaron v. Review Bd.*, 440 N.E.2d 1, 3 (Ind.App.1982); *Laclede Gas Co. v. Labor & Indus. Rel. Comm'n*, 657 S.W.2d 644, 652–53 (Mo.App.1983) (that is, when the substantial curtailment of the employer's operation ceases). The district court was correct in remanding for agency determination of when the stoppage of work ended with respect to each petitioner.

We have considered all claims made by the parties to this appeal and, as concerns those not expressly addressed herein, find them to be without merit. The district court is affirmed on both appeals.

AFFIRMED.

All Justices concur except CARTER, J., who takes no part.